IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

*3:07 cv 233-WKW*

| | |
|---|---|
| *In re:* ) | |
| ) | Chapter 13 |
| BERNICE GUNN, ) | |
| ) | Case No. 06-80646 |
| *Debtor.* ) | |
| ) | Judge William R. Sawyer |
| _____ ) | |
| ) | |
| BERNICE GUNN, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Adv. Pro. No. 06-08049 |
| ) | |
| TITLEMAX OF ALABAMA, INC., ) | |
| d/b/a TITLEMAX OF ALEXANDER ) | |
| CITY #1, ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

DESIGNATION OF ADDITIONAL ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

COMES NOW TitleMax of Alabama, Inc., d/b/a TitleMax of Alexander City #1

("TitleMax"), who will be the Appellee in the District Court, and hereby designates pursuant to

Fed. R. Bankr. P. 8006 the following items to be included in the record on appeal, in addition to

those items previously designated by Bernice Gunn, the Appellant, in the District Court:

| Date | Docket No. | Docket Entry |
|---|---|---|
| 11/3/2006 | 7 | Answer to Complaint by TitleMax |
| 11/17/2006 | 13 | Memorandum in Support of Motion to Dismiss by TitleMax |
| 12/21/2006 | 16 | Reply Memorandum in Support of Motion to Dismiss by TitleMax |
| 1/24/2007 | 17 | Order Granting Motions to Appear Pro Hac Vice by John |

1551555

*AP Doc # 28*

| | | | O'Shea Sullivan and Erich N. Durlacher |
|---|---|---|---|
| 2/23/2007 | 23 | | Notice of Appeal of Order Dismissing Adversary Proceeding by Bernice Gunn |
| 3/5/2007 | 27 | | Designation of Record and Statement of Issues on Appeal by Bernice Gunn |

**WHEREFORE,** TitleMax, designates the foregoing documents, in addition to those items previously designated by Bernice Gunn, as comprising the record on appeal.

Respectfully submitted, this 12th day of March, 2007.

BURR & FORMAN LLP

  /s/ Jennifer A. Harris
Jennifer A. Harris (HAR273)
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
(205) 251-3000 [dial]
(205) 458-5100 [telecopier]
jharris@burr.com

-and-

John O'Shea Sullivan
Erich N. Durlacher
BURR & FORMAN LLP
Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Georgia 30363
(404) 685-4313 [dial]
(404) 214-7387 [telecopier]
edurlach@burr.com

Attorneys for Defendant TitleMax of Alabama, Inc.,
d/b/a TitleMax of Alexander City #1

1551555

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| *In re:* ) | **Chapter 13** |
| ) | |
| **BERNICE GUNN,** ) | **Case No. 06-80646** |
| ) | |
| *Debtor.* ) | **Judge William R. Sawyer** |
| ) | |
| —————————————— ) | |
| ) | |
| **BERNICE GUNN,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | **Adv. Pro. No. 06-08049** |
| ) | |
| **TITLEMAX OF ALABAMA, INC.,** ) | |
| **d/b/a TITLEMAX OF ALEXANDER** ) | |
| **CITY #1,** ) | |
| ) | |
| *Defendant.* ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 12th day of March, 2007, a true and correct copy of the foregoing *DESIGNATION OF ADDITIONAL ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL* has been served on the following persons by depositing the same in the United States first class mail, postage prepaid, and addressed as follows:

Harvey B. Campbell, Jr.
CAMPBELL & CAMPBELL, P.C.
P.O. Drawer 756
Talladega, AL 35161

Huel M. Love, Jr.
P.O. Box 1079
Talladega, AL 35161

  /s/ Jennifer A. Harris
Jennifer A. Harris (HAR273)

BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
(205) 251-3000 [dial]

1551555

3

(205) 458-5100 [telecopier]
jharris@burr.com

4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

|  |  |  |
|---|---|---|
| *In re:* | ) | **Chapter 13** |
|  | ) |  |
| **BERNICE GUNN,** | ) | **Case No. 06-80646** |
|  | ) |  |
| *Debtor.* | ) | **Judge William R. Sawyer** |
|  | ) |  |
| ————————————— | ) |  |
|  | ) |  |
| **BERNICE GUNN,** | ) |  |
|  | ) |  |
| *Plaintiff,* | ) |  |
|  | ) |  |
| v. | ) | **Adv. Pro. No. 06-08049** |
|  | ) |  |
| **TITLEMAX OF ALABAMA, INC.,** | ) |  |
| **d/b/a TITLEMAX OF ALEXANDER** | ) |  |
| **CITY #1,** | ) |  |
|  | ) |  |
| *Defendant.* | ) |  |
| ————————————— | ) |  |

<u>**ANSWER OF DEFENDANT TITLEMAX OF ALABAMA, INC.**</u>
<u>**TO PLAINTIFF'S ADVERSARY COMPLAINT**</u>

**COMES NOW** Defendant, TitleMax of Alabama, Inc., d/b/a TitleMax of Alexander City

# 1 ("TitleMax" or "Defendant"), by and through its undersigned counsel, appearing specially so

as to preserve any and all defenses available under Rule 12 of the Federal Rules of Civil

Procedure, any and all defenses under the Federal laws of bankruptcy, and specifically

preserving the right to demand arbitration pursuant to a contractual agreement and the Federal

Arbitration Act, 9 U.S.C. §§ 1, <u>et seq.</u>, and for its Answer to the above-captioned Adversary

Complaint (the "Complaint") filed by Bernice Gunn (the "Plaintiff"), states as follows:

226061

AP Ntc # 7

## FIRST DEFENSE

For its answer to the specifically enumerated paragraphs of the Complaint, TitleMax states as follows:

1.      Affirmatively alleges that Bankruptcy Rules 3007 and 7001 speak for themselves, and denies all other allegations contained in Paragraph 1 of the Complaint as these allegations call for a legal conclusion.

2.      Denies all allegations contained in Paragraph 2 of the Complaint as these allegations call for a legal conclusion.

3.      Affirmatively alleges that 28 U.S.C. § 1334(e), 15 U.S.C. § 1640(e), and Bankruptcy Rule 7018 speak for themselves, and denies all other allegations contained in Paragraph 3 of the Complaint as these allegations call for a legal conclusion.

4.      Admits TitleMax is an Alabama corporation doing business in Alexander City, Alabama and lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in Paragraph 4 of the Complaint, and therefore denies the same.

5.      Admits TitleMax filed a Claim in the Plaintiff's Chapter 13 bankruptcy case (the "Claim"), affirmatively alleges that the Claim speaks for itself, and denies the remaining allegations contained in Paragraph 5 of the Complaint.

6.      Affirmatively alleges that 15 U.S.C. § 1602 speaks for itself, and denies all other allegations contained in Paragraph 6 of the Complaint as these allegations call for a legal conclusion.

7.      Admits Bernice Gunn and TitleMax entered into a "Pawn Ticket" for a pawn transaction dated October 22, 2005 (the "Pawn Ticket"), affirmatively alleges the document speaks for itself, and denies the remaining allegations contained in Paragraph 7 of the Complaint.

8.     Admits the Pawn Ticket has an original maturity date of November 21, 2005 and denies the remaining allegations contained in Paragraph 8 of the Complaint.

9.     Denies all allegations contained in Paragraph 9 of the Complaint and demands strict proof thereof.

### COUNT I
### (Truth-In-Lending)

10.     Denies all allegations contained in Paragraph 10 of the Complaint and demands strict proof thereof.

11.     Denies all allegations contained in Paragraph 11 of the Complaint and demands strict proof thereof.

12.     Lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint, and therefore denies the same.

13.     Denies all allegations contained in Paragraph 13 of the Complaint and demands strict proof thereof.

### COUNT II
### (Validity of a Lien)

14.     Affirmatively alleges that Alabama Pawnshop Act §§ 5-19A-1 et seq. speaks for itself and denies all other allegations contained in Paragraph 14 of the Complaint and demands strict proof thereof.

### AFFIRMATIVE DEFENSES

To avoid waiver, TitleMax asserts the following affirmative defenses, some or all or which may be established through discovery in this action:

1.     The Complaint fails to state a claim upon which relief can be granted.

2.     The Complaint fails to state a cause of action under the Truth in Lending Act ("TILA") under these facts and circumstances.

3.    Some or all of Plaintiff's purported claims are barred by the Plaintiff's agreement to arbitrate the claims asserted in the Complaint. TitleMax hereby specifically invokes the agreement to arbitrate and does not waive its right to insist on arbitration as the exclusive means to adjudicate any and all claims Plaintiff wishes to assert against TitleMax.

4.    TitleMax's TILA disclosures were not rendered ineffective or inaccurate by the subsequent events and occurrences following the Pawn Ticket transaction.

5.    The alleged claims by Plaintiff are barred because there has been no refinancing of the Pawn Ticket transaction.

6.    The alleged claims by Plaintiff are barred by the statute of limitations.

7.    The alleged claims by Plaintiff are barred by the Subsequent Event Doctrine.

8.    The alleged claims by Plaintiff are barred by Plaintiff's breach of contract.

9.    The alleged claims by Plaintiff are barred because TitleMax acted in good faith to comply with all rules, regulations, and interpretations of law relevant to Plaintiff's transaction.

10.    The alleged claims by Plaintiff are barred because any violation of TILA was unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such an error.

11.    The alleged claims by Plaintiff are barred because Plaintiff was fully informed and completely understood the terms of the transaction with TitleMax.

12.    The alleged claims by Plaintiff are barred because Plaintiff has no damages that were proximately caused by a TILA violation.

13.    The alleged claims by Plaintiff are barred because any violation of TILA that occurred was de minimis or technical in nature, and TitleMax has substantially complied with all applicable statutes and regulations.

226061

4

14.    The alleged claims by Plaintiffs are barred by the defense of judicial estoppel.

15.    The alleged claims by Plaintiffs are barred by the defenses of res judicata, waiver, laches, equitable estoppel, acquiescence and ratification.

16.    TitleMax cannot be held liable for any of the remedies sought by Plaintiff in the Complaint.

17.    TitleMax's actions and conduct were in accordance at all times with the contractual obligations of the parties under the Pawn Ticket, the Alabama Pawnshop Act, the Bankruptcy Code, and TILA.

18.    Further investigation and discovery in this case may reveal the existence of additional affirmative defenses.  TitleMax, therefore, reserves as possible defenses the remaining defenses contained in Rule 8(c), Federal Rules of Civil Procedure.

19.    To the extent that any of the allegations in the Complaint have not been expressly admitted or denied, they are hereby denied.

**WHEREFORE,** Defendant TitleMax asks the Court to enter Judgment as follows:

A.    Denying all relief sought by the Plaintiff in the Complaint against TitleMax;

B.    Dismissing all claims against TitleMax in this Adversary Proceeding with prejudice;

C.    Awarding TitleMax its costs incurred in this Adversary Proceeding; and

D.    Granting such other and further relief as the Court deems just and proper under the circumstances.


[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]


226061

Respectfully submitted, this 3rd day of November, 2006.

> BURR & FORMAN LLP
>
>
>   /s/ Jennifer A. Harris         
> Jennifer A. Harris (HAR273)
> 3100 Wachovia Tower
> 420 North 20th Street
> Birmingham, Alabama 35203
> (205) 251-3000 [dial]
> (205) 458-5100 [telecopier]
> jharris@burr.com
>
>      -and-
>
> John O'Shea Sullivan
> Erich N. Durlacher
> BURR & FORMAN LLP
> Suite 1100, 171 Seventeenth Street, N.W.
> Atlanta, Georgia 30363
> (404) 685-4313 [dial]
> (404) 214-7387 [telecopier]
> edurlach@burr.com
>
> Attorneys for Defendant TitleMax of Alabama, Inc.

226061

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| *In re:* | Chapter 13 |
| **BERNICE GUNN,** | Case No. 06-80646 |
| *Debtor.* | Judge William R. Sawyer |
| | |
| **BERNICE GUNN,** | |
| *Plaintiff,* | |
| v. | Adv. Pro. No. 06-08049 |
| **TITLEMAX OF ALABAMA, INC., d/b/a TITLEMAX OF ALEXANDER CITY #1,** | |
| *Defendant.* | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of November, 2006, a true and correct copy of the foregoing *Answer Of Defendant TitleMax of Alabama, Inc. To Plaintiff's Adversary Complaint* has been served on the following persons by depositing the same in the United States first class mail, postage prepaid, and addressed as follows:

Harvey B. Campbell, Jr.
CAMPBELL & CAMPBELL, P.C.
P.O. Drawer 756
Talladega, AL 35161

Huel M. Love, Jr.
P.O. Box 1079
Talladega, AL 35161


   /s/ Jennifer A. Harris   
Jennifer A. Harris (HAR273)

BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street

226061

Birmingham, Alabama 35203
(205) 251-3000 [dial]
(205) 458-5100 [telecopier]
jharris@burr.com

8

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| *In re:* ) | **Chapter 13** |
| ) | |
| **BERNICE GUNN,** ) | **Case No. 06-80646** |
| ) | |
| *Debtor.* ) | **Judge William R. Sawyer** |
| ) | |
| ————————————— ) | |
| ) | |
| **BERNICE GUNN,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | |
| ) | **Adv. Pro. No. 06-08049** |
| **TITLEMAX OF ALABAMA, INC.,** ) | |
| **d/b/a TITLEMAX OF ALEXANDER** ) | |
| **CITY #1,** ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

---

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

---

COMES NOW Defendant TitleMax of Alabama, Inc. ("TitleMax"), by and through undersigned counsel, and files this Memorandum in Support of Motion to Dismiss, respectfully showing the Court as follows:

## I.    INTRODUCTION

All of the claims asserted in the Adversary Complaint (the "Complaint") are based on the incorrect premise that Plaintiff entered into several, separate loan transactions with TitleMax. Plaintiff's theory is belied by the very contract she attaches to her Complaint, which clearly demonstrates that what Plaintiff contends were separate subsequent loan transactions were actually renewals and extensions of the original pawn transaction. Both the Truth In Lending

227003

AP Afu #13

Act, 15 U.S.C. §§ 1601 et seq., and the Alabama Pawnshop Act, Ala. Code §§ 5-19A-1 et seq., also support TitleMax's analysis, and Plaintiff has clearly failed to state a claim upon which relief can be granted. The Complaint should therefore be dismissed.

## II.    STATEMENT OF FACTS

According to the Complaint,[1] on or about October 22, 2005, Plaintiff entered into a pawn transaction with TitleMax (as defined in Ala. Code § 5-19A-2(3)) under which TitleMax advanced cash to Plaintiff and she pledged to TitleMax the certificate of title to her 1995 Mitsubishi Gallant automobile (the "Vehicle") and granted TitleMax a security interest therein. A true and correct copy of Plaintiff's Pawn Ticket dated October 22, 2005 (the "Pawn Ticket") is attached to the Complaint as well as this Memorandum as Exhibit A for the Court's convenience. (Complaint, ¶ 7). The Pawn Ticket further provides that Plaintiff may redeem the Vehicle by paying $579.95 by the maturity date, to wit: November 21, 2005. (Complaint, ¶ 8; see also Exhibit A).

Although the Complaint conspicuously fails to mention this, the Pawn Ticket has a provision whereby the Pawn Ticket can be renewed or extended, and the maturity date deferred, under the following circumstances:

> **Redemption and Request for Deferral or Renewal**. The terms of this paragraph will not apply if you do not meet our credit criteria or if the pledged goods have been taken into custody by a court or by a law enforcement officer or agency. On the Maturity Date or within 30 days thereafter (the "Grace Period"), if you choose not to redeem the pledged goods but request that we continue to hold the pledged goods for an additional thirty days ("Deferral Period"), then we will hold the pledged goods during the Deferral Period in exchange for your payment of the pawnshop charge owing, which may also include a prorated pawnshop charge

---

[1] All facts recited herein are taken from the Complaint. For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the allegations must be taken as true. TitleMax does not admit any of these allegations and only recites them here to demonstrate that the Complaint should be dismissed. TitleMax disputes Plaintiff's version of the sequence of events, as well as the underlying facts themselves, but as shown herein, the facts as pled are insufficient to state a claim upon which relief can be granted, and must be dismissed.

("Prorated Pawnshop Charge") for holding the pledged goods through the date of the deferral. The Deferral Period will run from the date that you make such payment and the new Maturity Date will be the 30th day after such payment. Likewise, if within the 30-day Grace Period after the end of any Deferral Period or subsequent Deferral Period, you request that we continue holding the pledged goods for an additional thirty days, then we will hold the pledged goods during such additional Deferral Period in exchange for such pawnshop charge. **Furthermore, any time before the expiration of any Deferral Period or subsequent Deferral Period, you may choose to redeem or repurchase the pledged goods by paying the amount of cash advanced and the original pawnshop charge, plus any unpaid, Prorated Pawn Charge.**

(See Exhibit A, p. 4)

The Complaint further alleges that "[s]ubsequent to the execution of [the Pawn Ticket], the Plaintiff and [TitleMax] entered into a series of loan agreements (hereinafter Subsequent Loan Agreement(s)). With respect to each of these subsequent loan agreements a finance charge was assessed by [TitleMax]. A representative copy of a Subsequent Loan Agreement, dated 7/21/06 is attached to this Adversary Complaint as 'Exhibit C.'" (Complaint, ¶ 9). The "Subsequent Loan Agreements" referred to in the Complaint are actually "Customer Receipts" evidencing the amount of money paid by Plaintiff toward her pawn, and evidencing the renewal of the Pawn Ticket and deferral of the maturity date. A true and correct copy of Plaintiff's Customer Receipt dated July 21, 2006 is attached to the Complaint as well as this Memorandum as Exhibit B for the Court's convenience.

Plaintiff claims that TitleMax's alleged failure to make various disclosures under TILA with respect to the "Subsequent Loan Agreements" constitutes a violation of TILA.[2] (Complaint, ¶¶ 10-13). Plaintiff also claims that she did not pledge the Vehicle as security in connection with the "Subsequent Loan Agreements" such that TitleMax has no security interest in the Vehicle,

---

[2]  Plaintiff does not contend that TitleMax violated TILA in connection with the original October 22, 2005 Pawn Ticket.

and each of Plaintiff's payments under the Pawn Contract were in violation of the Alabama Pawnshop Act. (Complaint, ¶ 14).

### III.     STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) should be granted when it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. <u>Linder v. Portocarrero</u>, 963 F.2d 332, 334 (11th Cir. 1992). <u>See Blount v. Sterling Healthcare Group, Inc.</u>, 934 F. Supp. 1365, 1368 (S.D. Fla. 1996). While the Court must accept the facts pleaded in the complaint as true, the Court need not accept as true conclusory allegations or legal characterizations. <u>In re DeLorean Motor Co.</u>, 991 F.2d 1236, 1240 (6th Cir. 1993). As one court has held, courts need not "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996). "[B]road conclusory allegations are inadequate even under the liberal pleading rules of the Federal Rules of Civil Procedure." <u>Williams v. Lear Operations Corp.</u>, 73 F. Supp. 2d 1377, 1380-81 (N.D. Ga. 1999).

It is proper for the Court to consider the various documents referred to by Plaintiff in the Complaint because Plaintiff makes general and specific reference to them throughout the Complaint, and attaches copies of some of them to the Complaint. In considering a motion to dismiss under Rule 12(b)(6), the Eleventh Circuit has held that extrinsic documents can be considered where those documents are referred to in the Complaint and are central to the plaintiff's claim. <u>Sturm v. Marriott Marquis Corp.</u>, 85 F. Supp. 2d 1356, 1366 (N.D. Ga. 2000)(citing <u>Harris v. Ivax Corp.</u>, 182 F.3d 799, 802 n.2 (11th Cir. 1999)); <u>see also</u> <u>Brooks v. Blue Cross Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997); <u>5th Bedford Pines Apartments, Ltd. v. Brandon</u>, 262 F. Supp. 2d 1369, 1375 (N.D. Ga. 2003). The Pawn Ticket

227003                                        4

and Customer Receipt are clearly "central to the Plaintiff's claim" in this action because they conclusively demonstrate that the pawn transaction was extended/renewed, not that the parties entered into so-called "Subsequent Loan Agreements." It is thus appropriate for the Court to consider these documents when ruling on TitleMax's Motion to Dismiss.

## IV.     ARGUMENT AND CITATION OF AUTHORITY

### A.     The Truth in Lending Claim (Count I), Should Be Dismissed Because No Additional Disclosures Were Required.

Plaintiff cannot state a claim for TILA violations. Plaintiff's hypothesis that she entered into "Subsequent Loan Agreements" following the original Pawn Contract on October 22, 2005 is factually and legally incorrect. Her theory is undermined by the very Pawn Ticket she agreed to and signed, and no law or other requirement obligated TitleMax to give new TILA disclosures every time the Pawn Ticket was renewed and the maturity date deferred. The Pawn Ticket itself provides for renewals and deferrals of the maturity date, and the Alabama Pawnshop Act likewise contemplates extensions/renewals of the same pawn transaction. The parties' renewals of the Pawn Ticket did not create new or "subsequent" loans, and TILA did not require TitleMax to constantly re-disclose or update the information that was previously disclosed on October 22, 2005. Before turning to the law under TILA, it is important for the Court to understand how both the Alabama Pawnshop Act, and the parties' Pawn Ticket, work mechanically.

### 1.     The Alabama Pawnshop Act and the parties' Pawn Contract create a unique agreement that is unlike a conventional consumer loan.

Under the Alabama Pawnshop Act, a "pawn transaction" is defined as "[a]ny loan on the security of pledged goods or any purchase of pledged goods on condition that the pledged goods are left with the pawnbroker and may be redeemed or repurchased by the seller for a fixed priced within a fixed period of time." Ala. Code § 5-19A-2(3). Alabama law is clear that the pledgor/customer is not obligated to redeem the pledged goods or make any payment on a pawn

227003                                         5

transaction. <u>See</u> Ala. Code § 5-19A-6.  Therefore, although termed a "loan," the customer is not personally liable for the amount of money loaned, but stands to lose his/her pledged goods, <u>i.e.</u>, the Vehicle in this case, if the pawn is not paid in accordance with the terms thereof.  The Pawn Ticket in this case is clearly a "pawn transaction" as defined under the Alabama Pawnshop Act because by its terms, it was a loan to Plaintiff on the security of the Vehicle which may be redeemed for a fixed price within a fixed period of time, <u>i.e.</u>, the maturity date. (<u>See</u> Exhibit A). Pursuant to the Pawnshop Act and the Pawn Ticket, the customer/pledgor forfeits title to the pledged goods if they are not redeemed, <u>i.e.</u>, paid for, within 30 days following the maturity date. <u>See</u> Ala. Code § 5-19A-6.  If the goods are not redeemed, "absolute right, title, and interest in and to the goods shall vest in the pawnbroker." <u>Id.</u>

The Pawnshop Act and the Pawn Ticket also contemplate deferrals or extensions of the maturity date.  Ala. Code § 5-19A-7 states as follows:

> (a)  A pawnbroker may contract for and receive a pawn shop charge in lieu of interest or other charges for all services, expenses, costs, and losses of every nature but not to exceed 25 percent of the principal amount, per month, advanced in the pawn transaction.

> (b)  Any interest, charge, or fees contracted for or received directly or indirectly, in excess of the amount permitted under subsection (a) shall be uncollectible and the pawn transaction shall be void. The pawnshop charge allowed under subsection (a) shall be deemed earned, due, and owing as of the date of the pawn transaction and a like sum shall be deemed earned, due, and owing on the same day of the succeeding month.

Ala. Code § 5-19A-7.  These provisions are important for a few reasons.  First, the statute authorizes a pawnshop charge which is deemed "earned, due, and owing" on the same day of succeeding months of the <u>same</u> pawn transaction.  Clearly therefore, the statute contemplates one pawn transaction being extended to subsequent months and subsequent pawn periods.  Second, while these provisions provide for extensions and renewals of the same pawn transaction, it is important to note that the statute does not require separate pawn tickets for the "succeeding

months," although the statute is very specific and stringent about the requirement of a pawn ticket and its contents at the outset of a pawn transaction. See Ala. Code §§ 5-19A-3, 5-19A-4, and 5-19A-5.

The parties' Pawn Ticket provides for extensions or renewals of the Pawn Ticket. The paragraph in the middle of page 4 of the Pawn Ticket, which is set forth in its entirety in the Statement of Facts above, states clearly that Plaintiff may choose not to redeem the Vehicle on the maturity date, and instead elect to extend the pawn and defer the maturity date upon payment of a pawnshop charge. Upon renewal, the new maturity date of the same pawn transaction is deferred to become 30 days after the date on which Plaintiff pays the pawnshop charge to elect the deferral. Importantly, Plaintiff agreed that at anytime before the expiration of any deferral period, Plaintiff may choose to redeem the pledged goods by paying back the amount of cash advanced, plus any unpaid, prorated pawnshop charge. (See Exhibit A, p. 4). Clearly, therefore, the parties' agreement was to extend the maturity date under the same pawn transaction under certain conditions, and make all terms of the same Pawn Ticket apply. A new pawn ticket is not required in the extensions and renewals -- pawn tickets are only required "at the time of making the pawn." See Ala. Code § 5-19A-3. Therefore, Alabama law and the Pawn Ticket are very clear that the "Subsequent Loan Agreements" that Plaintiff alleges required new TILA disclosures were actually extensions of the original pawn transaction which, as shown below, merely deferred the maturity date to a date in the future and did not require new TILA disclosures every month.

        **2.**      **The Truth in Lending Act does not require new TILA disclosures every time a pawn transaction is renewed or extended.**

The Truth In Lending Act does not require TitleMax to re-disclose or update the TILA disclosures every time the maturity date is extended in a pawn transaction. In closed-end

transactions[3] such as the Pawn Ticket, TILA requires the disclosures to be made as of the time

the credit is extended, and it is as of that time that the adequacy and accuracy of the disclosures

are measured.  See Begala v. PNC Bank, Ohio, N.A., 163 F.3d 948, 950 (6th Cir. 1998).  As

demonstrated above, the so-called "Subsequent Loan Agreements" were not separate loan

agreements at all -- they were continuations of the original Pawn Ticket.  Therefore, the issue

under TILA is whether the statute and implementing regulations create any post-consummation

duty of disclosure in a pawn transaction where the maturity date is routinely extended by the

parties every 30 days.

    Under TILA, subsequent events generally do not affect the validity of initial disclosures

or require the creditor to make further disclosures.  In 15 U.S.C. § 1634, TILA provides as

follows:

> Effect of subsequent occurrence.  If information disclosed in accordance with this
> part is subsequently rendered inaccurate as the result of any act, occurrence, or
> agreement subsequent to the delivery of the required disclosures, the inaccuracy
> resulting therefrom does not constitute a violation of this part.  [emphasis added].

15 U.S.C. § 1634.   The regulations further clarify the narrow circumstances when subsequent

disclosures are required, as follows:

> Effect of subsequent events.  If a disclosure becomes inaccurate because of an
> event that occurs after the creditor delivers the required disclosures, the
> inaccuracy is not a violation of this regulation, although new disclosures may be
> required under paragraph (f) of this section, § 226.19, or §226.20.

12 C.F.R. § 226.17(e).  As shown below, all of the exceptions listed above in § 226.17(e) are all

inapplicable here.

---

    [3]   Closed-end credit is defined under TILA to mean consumer credit other than open-end
credit as defined in the regulations.  12 C.F.R. § 226.2(a)(10).  Open-end credit is credit under a
plan where, inter alia, the amount of credit that may be extended to the consumer up to a limit
during the term is generally made available to the extent that any outstanding balance is repaid.
12 C.F.R. § 226.2(a)(20).  Pawn transactions are clearly closed-end credit because there is only
one advance to the consumer.

227003                                       8

First, § 226.19 deals with certain residential mortgage and variable rate transactions – neither of which is relevant in a pawn transaction. Section 226.17(f) deals with situations where early disclosures given <u>before</u> consummation are rendered inaccurate by a subsequent event <u>before</u> consummation, and is thus inapplicable here. The closest exception in this case would be under § 226.20(a) which deals with "refinancings." Plaintiff may argue that the "Subsequent Loan Agreements" qualified as refinancings under TILA and therefore required subsequent TILA disclosures. However, the definition of refinancings demonstrates that this exception is also inapplicable here.

"Refinancings" is defined in the regulations as follows:

> A refinancing occurs when an existing obligation that was subject to this subpart is <u>satisfied and replaced by a new obligation</u> undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. The new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation. [emphasis added].

12 C.F.R. § 226.20(a). Refinancings are therefore limited to transactions where the original credit or obligation is satisfied and replaced by a new obligation. A deferral of the maturity date does not <u>satisfy</u> the pawn transaction, nor does it create a <u>new obligation</u>.[4] A deferral of the maturity date merely postpones the date on which the pledgor must redeem the Vehicle. A refinancing occurs when a new loan is made to pay off and replace the former loan. By way of example, refinancings occur often in the residential mortgage industry whereby a consumer's mortgage loan is paid off, cancelled, and replaced by the new loan and new mortgage documents. Clearly in this example, the new lender that pays off and satisfies the old loan is required to provide TILA disclosures concerning the new loan. TitleMax's agreement to extend the term of

---

[4] Indeed, a consumer is not obligated to do anything in a pawn transaction because the pledgor is not personally obligated to pay the pawnshop. <u>See</u> Ala. Code § 5-19A-6. Therefore, although pawn transactions do not fit nicely anywhere in TILA's framework governing "credit" in the first place, it is clear that the pawn obligation is not "satisfied" by a renewal of, or deferral of the maturity date in, the same pawn transaction.

the original loan through the payment of a pawnshop charge authorized under Alabama law is not a refinancing and does not require new TILA disclosures.

**B.    The Security Interest Granted on April 2, 2004 Remains Valid and the Claim for "Validity of a Lien" (Count II) Should be Dismissed.**

Plaintiff alleges that because the Customer Receipts that she refers to as Subsequent Loan Agreements did not contain a grant of a security interest, TitleMax does not have a security interest in her Vehicle. Plaintiff's theory is again based on a mischaracterization of the contract and law. As demonstrated above, the Pawn Ticket contemplated renewals of the pawn transaction and extensions of the maturity date. Plaintiff's allegations demonstrate that she indeed renewed the pawn and extended the maturity date as recently as July 21, 2006. Because the Vehicle was never redeemed, and the pawn was never cancelled or extinguished, the grant of security interest from the October 22, 2005 Pawn Ticket remains valid and enforceable. There is simply no set of facts under which Plaintiff can show that TitleMax violated the Alabama Pawnshop Act by not obtaining in each Customer Receipt a specific re-grant of the same security interest that TitleMax already had. There is simply nothing to show that the original grant of security interest expired. Plaintiff's "kitchen sink" claim that TitleMax has no security interest in the Vehicle contradicts the agreement and the law and fails to state a claim upon which relief can be granted.

Respectfully submitted, this 17th day of November, 2006.

BURR & FORMAN LLP


  /s/ Jennifer A. Harris
Jennifer A. Harris (HAR273)
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
(205) 251-3000 [dial]

227003

10

(205) 458-5100 [telecopier]
jharris@burr.com

-and-

John O'Shea Sullivan
Erich N. Durlacher
BURR & FORMAN LLP
Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Georgia 30363
(404) 685-4313 [dial]
(404) 214-7387 [telecopier]
edurlach@burr.com

Attorneys for Defendant TitleMax of Alabama, Inc.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| *In re:* | ) | |
| | ) | **Chapter 13** |
| **BERNICE GUNN,** | ) | |
| | ) | **Case No. 06-80646** |
| *Debtor.* | ) | |
| | ) | **Judge William R. Sawyer** |
| | ) | |
| | ) | |
| **BERNICE GUNN,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Adv. Pro. No. 06-08049** |
| | ) | |
| **TITLEMAX OF ALABAMA, INC.,** | ) | |
| **d/b/a TITLEMAX OF ALEXANDER** | ) | |
| **CITY #1,** | ) | |
| | ) | |
| *Defendant.* | ) | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 17th day of November, 2006, a true and correct copy of the foregoing *MEMORANDUM IN SUPPORT OF MOTION TO DISMISS* has been served on the following persons by depositing the same in the United States first class mail, postage prepaid, and addressed as follows:

Harvey B. Campbell, Jr.
CAMPBELL & CAMPBELL, P.C.
P.O. Drawer 756
Talladega, AL 35161

Huel M. Love, Jr.
P.O. Box 1079
Talladega, AL 35161

  /s/ Jennifer A. Harris
Jennifer A. Harris (HAR273)

BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
(205) 251-3000 [dial]
(205) 458-5100 [telecopier]
jharris@burr.com

227003

12

**EXHIBIT A**

| Title Pledge Record No.: 1364693 | | Pawn Ticket | | Transaction Date: 10/22/2005 | |
|---|---|---|---|---|---|
| PAWNBROKER:  NAME TitleMax of Alabama, Inc. d/b/a TITLEMAX OF ALEXANDER CITY | | PHONE NUMBER (256) 215-6662 | | | FAX NUMBER (256) 215-7277 |
| STREET ADDRESS 3916 C HIGHWAY 280 | | CITY ALEXANDER CITY | | STATE AL | ZIP CODE 35010 |
| PAWNLENDER HOURS OF OPERATION: Monday to Friday __9__ A.M to ___6__ P.M, Saturday __10__ A.M to __2__ P.M, CLOSED ON SUNDAY. | | | | PRIMARY CONTACT PERSON ANDRE WHETSTONE | |

| PLEDGOR:  FIRST NAME BERNICE | MIDDLE NAME | LAST NAME GUNN | SOCIAL SECURITY NO. 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 | DRIVER'S LICENSE NO./STATE ID NO. 3390072 | |
|---|---|---|---|---|---|
| RESIDENCE STREET ADDRESS 69050 HWY 9 | | | CITY GOODWATER | STATE AL | ZIP CODE 35072 |
| HOME PHONE (256) 839-5708 | | CELL PHONE (256) 404-8057 | RACE BLACK | SEX FEMALE | HEIGHT 507 | DATE OF BIRTH 05/08/1954 |

| CO-PLEDGOR:  FIRST NAME | MIDDLE NAME | LAST NAME | SOCIAL SECURITY NO. | DRIVER'S LICENSE NO./STATE ID NO. | |
|---|---|---|---|---|---|
| RESIDENCE STREET ADDRESS | | | CITY | STATE | ZIP CODE |
| HOME PHONE | CELL PHONE | RACE | SEX | HEIGHT | DATE OF BIRTH |

| MOTOR VEHICLE   TITLE CERTIFICATE NUMBER 33895077 | | STATE AL | VEHICLE IDENTIFICATION NUMBER (VIN) 4A3AJ46G8SEO66151 | LICENSE PLATE NUMBER 22A219V |
|---|---|---|---|---|
| YEAR 1995 | MAKE MITSUBISHI | MODEL GALANT | TYPE | COLOR MRN |

In this Pawn Ticket the words "Pawn Ticket," "original contract," and "ticket," mean this signed agreement including the Waiver of Jury Trial and Arbitration Provision. In this Pawn Ticket the words "you" and "your" mean the pledgor and/or co-pledgor identified above who have signed it.  The words "Pawnbroker," "we", "us" and "our" mean TitleMax of Alabama, Inc. d/b/a TITLEMAX OF ALEXANDER CITY #1  which is in the business of lending money on the security of pledged goods left in pawn, operating pursuant to the Alabama Pawnshop Act Code of Ala. § 5-19A-1 et seq. and regulated by the Supervisor of the Bureau of Loans of the State Banking Department. The words "item", "goods", "pledged goods" and "item pawned" mean the motor vehicle identified above.

In consideration of your delivery to us of the Motor Vehicle's Certificate of Title endorsed in blank and keys for the pledged goods, we agree to loan you $500.00  ("Principal Loan Amount"), hold title to the pledged goods for thirty days until 11/21/2005  (the "Maturity Date"), and obtain constructive possession of the pledged goods. That is, we will only maintain possession of the TITLE to the motor vehicle ONLY, not the actual motor vehicle. If you choose to redeem or repurchase the pledged goods, then you agree to pay us $ 579.95  on the Maturity Date, and we will return the pledged goods to you, unless the pledged goods have been taken into custody by a court or by a law enforcement officer or agency. You hereby grant to us a security interest in your motor vehicle which is titled, unencumbered, and listed above.  We do not accept personal checks. Please note the following:  1. The amount of cash advanced under this Pawn Ticket is $500.00 ; 2. The maturity date of the pawn transaction is 11/21/2005 ; 3. The amount due hereunder is $579.95 ; 4. The monthly rate is 15.9% and the pawn charges are $ 79.95 .

## FEDERAL TRUTH-IN-LENDING DISCLOSURES



| | Amount Financed | Total of Payments |
|---|---|---|
| | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all payments as scheduled |
| | $ 500.00 | $ 579.95 |

Payment Schedule:  One payment in the amount of $579.95  due on  Monday  (day of week), 11  (month) 21  (day),  05  (year).

You are giving a security interest in the Motor Vehicle.

Security:  You are giving a security interest in the Motor Vehicle.

Prepayment:  If you pay off early, you will not be entitled to a refund of part of the finance charge.

See the terms below and on the other pages of this Pawn Ticket for any additional information about nonpayment, default and prepayment refunds.

Itemization of Amount Financed:
1.   $ 500.00  Amount given to you directly.
2.   $ 0.00  Amount paid on account no. _____ with us.
3.   $ 0.00  Amount paid to others on your behalf (title fees).

Page 1 of 4



**Prepayment.** You may prepay in full at any time the amount owing to redeem the pawned item and will not incur an additional charge or fee. However, because the finance charge (pawnshop charge) is earned, due, and owing as of the date of the pawn transaction, you will not be entitled to a rebate and refund of any part of the finance charge.

**Representations and Warranties.** You verify that you are the rightful owner of the goods or are entitled to sell or pledge the goods. You verify that you are 19 years of age or older.

**Default.** Because you have no obligations to redeem the pledged goods or pay us any amount hereunder, you will only be in default if the representations and warranties you make herein are false. In the event of default, we may exercise our rights under Alabama law.

**Nonredemption and Forfeiture.** You shall have no obligation to redeem pledged goods or make any payment on this pawn transaction. Pledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to us and absolute right, title, and interest in and to the goods shall vest in us, unless you request and we grant a deferral. You shall have no obligation to redeem pledged goods or make any payment on this pawn transaction even if it has been deferred. Pledged goods not redeemed within 30 days following any deferred maturity date shall be forfeited to us and absolute right, title, and interest in and to the goods shall vest in us.

**Lost Goods or Tickets.** Any person properly identified as pledgor or as authorized representative of the pledgor and presenting the pawn ticket to us shall be entitled to redeem or repurchase the pledged goods described herein. If the pawn ticket is lost, destroyed, or stolen, you shall so notify us in writing, and receipt of this notice shall invalidate the pawn ticket, if the pledged goods have not previously been redeemed. Before delivering the pledged goods or issuing a new pawn ticket, we shall require you to make a written statement of the loss, destruction, or theft of the ticket. We are entitled to a fee not to exceed five dollars in connection with each lost, destroyed, or stolen pawn ticket and the taking of a properly prepared written statement for the pawn ticket.

**Lien and Late Redemption.** We shall have a lien on the pledged goods pawned for the money advanced and the pawnshop charge owed, but not for other debts due to us, subject to the rights of other persons who have an ownership interest or prior liens in the pledged goods. We shall retain possession of the pledged goods except as otherwise herein provided and by applicable law until the lien is satisfied. Pledged goods not redeemed on or before the maturity date set out in this pawn ticket or a subsequently extended maturity date, shall be held by us for 30 days following that date and may be redeemed or repurchased by you within the period by the payment of the originally agreed redemption price, and by the payment of an additional pawnshop charge equal to the original pawnshop charge.

**Governing Law and Assignment.** This Pawn Ticket shall be governed by the laws of the State of Alabama, except that the arbitration provision is governed by the Federal Arbitration Act ("FAA"). We may assign or transfer this Pawn Ticket or any of our rights hereunder.

**WAIVER OF JURY TRIAL AND ARBITRATION PROVISION.** Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1. For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Pawn Ticket (including the Arbitration Provision), the information you gave us before entering into this Pawn Ticket, any past agreement or agreements between you and us, and/or any renewal of this Pawn Ticket; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all



Additional Terms and Conditions of the Pawn Ticket

claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

2. **You acknowledge and agree that by entering into this Arbitration Provision:**
   (a) YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;
   (b) YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and
   (c) YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

3. Except as provided in Paragraph 6 below, all disputes including any Representative Claims against us and/or related third parties **shall** be resolved by binding arbitration **only** on an individual basis with you. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.

4. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select either of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org, or National Arbitration Forum (1-800-474-2371) http://www.arb-forum.com. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Pawn Ticket or the Arbitration Provision, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

5. Regardless of who demands arbitration, we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the FAA, and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the transaction under this Pawn Ticket occurred, or in such other place as may be ordered by the arbitrator. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. If the arbitrator renders a decision or an award in your favor resolving the dispute, then you will not be responsible for reimbursing us for your portion of the Arbitration Fees, and we will reimburse you for any Arbitration Fees you have previously paid. If the arbitrator does not render a decision or an award in your favor resolving the dispute, then the arbitrator shall require you to reimburse us for the Arbitration Fees we have advanced, not to exceed the amount which would have been assessed as court costs if the dispute had been resolved by a state court with jurisdiction, less any Arbitration Fees you have previously paid. At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having jurisdiction.

6. All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by



**Additional Terms and Conditions of the Pawn Ticket**

binding arbitration. Furthermore, nothing in this Arbitration Provision shall limit the right of you or us (a) to foreclose against the Motor Vehicle by the exercise of any power under the Pawn Ticket or under applicable law, (b) to exercise self-help remedies such as set off or repossession, or (c) to obtain provisional or ancillary remedies such as pre-judgment seizure of property, detinue, replevin, or injunctive relief, or to seek or obtain any other traditional equitable relief which does not claim money damages from a court having jurisdiction. The institution and maintenance by you or us of any action set forth in this *Paragraph 6* shall not constitute a waiver of the right to submit any dispute to arbitration, including any counterclaim asserted.

7. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA. If a final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the State of Alabama.

8. This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. The Arbitration Provision is binding upon and benefits us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been renewed, prepaid, paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.

**Redemption and Request for Deferral or Renewal.** The terms of this paragraph will not apply if you do not meet our credit criteria or if the pledged goods have been taken into custody by a court or by a law enforcement officer or agency. On the Maturity Date or within 30 days thereafter (the "Grace Period"), if you choose not to redeem the pledged goods but request that we continue to hold the pledged goods for an additional thirty days ("Deferral Period"), then we will hold the pledged goods during the Deferral Period in exchange for your payment of the pawnshop charge owing, which may also include a prorated pawnshop charge ("Prorated Pawnshop Charge") for holding the pledged goods through the date of the deferral. The Deferral Period will run from the date that you make such payment and the new Maturity Date will be the 30th day after such payment. Likewise, if within the 30-day Grace Period after the end of any Deferral Period or subsequent Deferral Period, you request that we continue holding the pledged goods for an additional thirty days, then we will hold the pledged goods during such additional Deferral Period in exchange for such pawnshop charge. Furthermore, any time before the expiration of any Deferral Period or subsequent Deferral Period, you may choose to redeem or repurchase the pledged goods by paying the amount of cash advanced and original pawnshop charge, plus any unpaid, Prorated Pawn Charge.

---

**Alabama Disclosures:**

1. Any personal property pledged to a pawnbroker within this state is subject to sale or disposal when there has been no payment made on the account for a period of 30 days past maturity date of the original contract, and no further notice is necessary.

2. The pledgor of this item attests that it is not stolen, it has no liens or encumbrances against it, and the pledgor has the right to sell or pawn the item.

3. The item pawned is redeemable only by the bearer of this ticket.

_Bernice Gunn_
Pledgor's Signature

---

By signing this Pawn Ticket, you acknowledge that it was filled in before you did so and that you have received an exact copy of it, signed or initialed by an employee of TitleMax of Alabama, Inc. You also warrant and represent that you are not a debtor under any proceeding in bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code. You further acknowledge that you have read, understand, and agree to all of the terms of this Pawn Ticket, including the above "Waiver of Jury Trial and Arbitration Provision."

If payment is made after the maturity/renewal date, but within the 30-day Grace Period, the new maturity/renewal date shall be 30 days from the date of that renewal and the Prorated Pawn Charge may apply at the pawnbroker's option. This document is subject to a security interest in favor of, and pledged as collateral to, CapitalSource Finance LLC.

_Bernice Gunn_
Pledgor Signature

_____
Co-Pledgor Signature

TitleMax of Alabama, Inc. d/b/a TITLEMAX OF ALEXANDER CITY #1
By _____
its employee

Account Number: 1364693

Page 4 of 4

**EXHIBIT B**

## Customer Receipt

| PAYMENT INFORMATION | | RECEIPT NUMBER 2161452 |
|---|---|---|
| PAYMENT MADE TO<br>TITLEMAX OF ALEXANDER CITY #1<br>3916 C HIGHWAY 280<br>ALEXANDER CITY, AL 35010<br>(256) 215-6662 | | PAYMENT MADE BY<br>BERNICE GUNN<br>69050 HWY 9<br>GOODWATER, AL 35072<br>(256) 839-5708 |

| DATE/TIME OF RECEIPT<br>7/21/2006 | PAYMENT DUE DATE<br>07/22/2006 | ACCOUNT NUMBER<br>2130946 | ORIGINAL ACCOUNT NUMBER<br>2037114 |
|---|---|---|---|

| PAYMENT TYPE<br>CASH | AGENT RECEIVING PAYMENT<br>steven.crawford | PAYMENT DUE<br>07/22/2006 |
|---|---|---|

### TODAY'S PAYMENT DETAILS

| | |
|---|---|
| PRINCIPAL PAID: | $0.00 |
| + | |
| INTEREST PAID: | $63.93 |
| CHARGES PAID INCLUDING ANY PRORATED PAWNSHOP CHARGE: | $0.00 |
| = | |
| TOTAL PAID TODAY: | $63.93 |

### NEXT PAYMENT INFORMATION

| | |
|---|---|
| PRINCIPAL DUE: | $399.82 |
| + | |
| INTEREST DUE: | $63.93 |
| UNPAID PRORATED PAWNSHOP CHARGE: | $0.00 |
| = | |
| TOTAL AMOUNT DUE: | $463.75 |
| INTEREST DUE ON: | 08/21/06 |

RECEIVE 25$ FOR REFERRALS

You are only required to pay the Interest Due amount in order to extend or renew the Pawn Ticket. Your next payment due date is indicated above in the Interest Due Date block. The length of your Pawn Ticket is 30 days and can only be renewed or extended with the agreement of both parties and only for 30-day incremental periods.

By signing below, the customer acknowledges that payment information above is accurate and that any amount shown in the Interest Due block above must be paid in 30 days.

*Bernice Gunn*
CUSTOMER SIGNATURE

### *Send us a new customer and we will cash this check for you!!!*

TitleMax
3916 C HIGHWAY 280
ALEXANDER CITY, AL 35010
(256) 215-6662

Date _____

Pay to the
Order of   BERNICE GUNN [2130946]          **$25.00**

Twenty Five and 00/100 _____ *Dollars*

For   Customer Referral Fee

Authorized by: _____

Referred Customer
Account #: _____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| *In re:* ) | **Chapter 13** |
| ) | |
| **BERNICE GUNN,** ) | **Case No. 06-80646** |
| ) | |
| *Debtor.* ) | **Judge William R. Sawyer** |
| ) | |
| —————————————— ) | |
| ) | |
| **BERNICE GUNN,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | |
| ) | **Adv. Pro. No. 06-08049** |
| **TITLEMAX OF ALABAMA, INC.,** ) | |
| **d/b/a TITLEMAX OF ALEXANDER** ) | |
| **CITY #1,** ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

COMES NOW Defendant TitleMax of Alabama, Inc. ("TitleMax"), by and through its undersigned counsel, and files this Reply Memorandum in Support of Motion to Dismiss, respectfully showing the Court as follows:

### I. INTRODUCTION

TitleMax has demonstrated that the Truth In Lending Act does not require new TILA disclosures every time a pawn transaction is renewed or extended by the parties. In response, Plaintiff ignores essentially all of TitleMax's arguments, and instead primarily relies on inapplicable authority that was abrogated by Federal Reserve Board ("FRB") regulations implemented 25 years ago. Plaintiff also cites to other authority that actually criticizes the

228663

primary authority she relies on, and supports TitleMax's position.  As shown in TitleMax's Memorandum, as well as below, the parties did not "refinance" the pawn every 30 days -- they extended it and deferred the maturity date -- and therefore, the Truth In Lending Act did not require TitleMax to provide new TILA disclosures every 30 days.  Therefore, all claims asserted in this action must be dismissed.

## II. <u>ARGUMENT AND CITATION OF AUTHORITY</u>

The authority relied upon by Plaintiff is no longer good law and Plaintiff is left with no legal support for her position.  The support for Plaintiff's TILA claims in this matter relies primarily on a 1978 case, <u>Dennis v. Handley</u>, 453 F. Supp. 833 (N.D. Ala. 1978).  In <u>Dennis</u>, the plaintiff pawned a diamond ring with the defendant, and the parties renewed the pawn from time to time over the course of 15 or more months.  The Court found that the plaintiff was entitled to Truth In Lending disclosures with each renewal of the pawn, because <u>as it read in 1978</u>, the Court found that Regulation Z, 12 C.F.R. § 226.8(j), provided that the pawn renewals were "refinancings."  <u>Dennis</u>, 453 F. Supp. at 835.

While TitleMax (and as shown below, the Eleventh Circuit) believes that <u>Dennis</u> was incorrectly decided, it makes no difference because the opinion was abrogated by the FRB's amendment to Regulation Z in 1981.  Effective October 1, 1982, Regulation Z was amended to remove the provision relied upon by the Court in <u>Dennis</u>, and to provide a definition for "refinancings" where none had existed before.  In 1978, when <u>Dennis</u> was decided, the only pertinent language on refinancings in Regulation Z was as follows:

> (j) *Refinancing, Consolidating or Increasing.*  If any existing extension of credit is refinanced, or two or more existing extensions of credit are consolidated, or an existing obligation is increased, such transaction shall be considered a new transaction subject to the disclosure requirement of this part.

Scaife v. Anderson, 825 F.2d 357, 359 (11th Cir. 1987)(quoting pre-1981 Reg. Z, 12 C.F.R. §

226.8(j)). The 1981 Regulation Z amendment deleted this provision and added, inter alia, the

following new provision which defines "refinancings":

> (a) *Refinancings.* A refinancing occurs when an existing obligation that was
> subject to this subpart is **satisfied and replaced by a new obligation** undertaken
> by the same consumer. A refinancing is a new transaction requiring new
> disclosures to the consumer. The new finance charge shall include any other
> portion of the old finance charge that is not credited to the existing obligation.

Scaife, 825 F.2d 359 (quoting post-1981 Reg. Z, 12 C.F.R. § 226.20)(emphasis added).

Therefore, when Dennis was decided, refinancings was not defined to mean an obligation which

is satisfied and replaced by a new obligation, and the result in Dennis would have been different

under § 226.20(a) since the diamond pawn in that case was not satisfied and replaced by a new

obligation. Indeed, the opinion describes the redemption of the pawn in Dennis by stating that

the plaintiff paid the original $200 principal and $400 in finance charges, showing there was no

previous satisfaction and replacement.

The FRB's amendment to Regulation Z provides a concrete definition which clearly

places an extension of a pawn transaction outside the definition of refinancing and therefore

outside the provisions requiring subsequent TILA disclosures. The Pawn Ticket in this case

provides for deferral of the maturity date and extension of the pawn at Plaintiff's election. If

Plaintiff wanted to extend the pawn for an additional 30 days, she could choose to do so by

paying the specified charges and the maturity date would be deferred. (See Exhibit A, p. 4 of

TitleMax's original Memorandum). According to the parties' agreement, therefore, when

Plaintiff elected to defer the maturity date, the pawn was extended. Upon the deferrals, the pawn

was not "satisfied and replaced" by a new pawn. If the pawn is extended, it cannot also be

satisfied and replaced -- it is the same pawn. Therefore, the deferrals that Plaintiff elected during

the life of her pawn were not refinancings under TILA and no new TILA disclosures were required.

The FRB's Official Staff Commentary on the 1981 amendments to the refinancings sections is determinative.[1]   The Official Commentary states as follows with respect to refinancings:

> 1.     Definition.  A refinancing is a new transaction requiring a complete new set of disclosures.  <u>Whether a refinancing has occurred is determined by reference to whether the original obligation has been satisfied or extinguished and replaced by a new obligation, based on the parties' contract and applicable law.</u>  The refinancing may involve the consolidation of several existing obligations, disbursement of new money to the consumer or on the consumer's behalf, or the rescheduling of payments under an existing obligation.  <u>In any form, the new obligation must completely replace the prior one.</u>
>
> .  **<u>Changes in the terms of an existing obligation, such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation.</u>**
>
> . . .
>
> 2.     Exceptions.  <u>A transaction is subject to § 226.20(a) only if it meets the general definition of a refinancing.</u> . . .

Official Staff Commentary, § 226.20 (emphasis added).  The Official Commentary therefore makes clear that to be a refinancing, it is imperative that a new obligation completely replace the prior one, and changes in the terms of an existing obligation <u>such as the deferral of individual installments</u> is not a refinancing unless there is a cancellation of the existing obligation.  The Pawn Ticket at issue was renewed.  It was extended.  The maturity date was deferred.  The Pawn Ticket survived the deferral.  A new pawn contract did not substitute and replace the original

---

[1] The FRB Commentary must be followed.  Even if the FRB was not relying on plain and unambiguous language in the regulation, its interpretation of the regulation would still have to be given great deference and followed unless it were "demonstrably irrational."  <u>Ford Motor Credit Co. v. Milhollin</u>, 444 U.S. 555, 557, 559-60, 565 (1980).  The FRB's interpretation is perfectly rational and has been followed by the Courts.

one. What Plaintiff calls the "subsequent loan transaction" with TitleMax therefore were nothing more than the same pawn she originally entered and no new TILA disclosures were required.

Courts have also found similar situations to be outside the definition of refinancings. For example, in <u>Begala v. PNC Bank, Ohio, N.A.</u>, 163 F.3d 948, 950 (6th Cir. 1998), the plaintiff had a 60 month car loan with the defendant bank. Over the life of the loan, the bank sent nine unsolicited letters to the plaintiff offering one month extensions, or deferrals, of his loan, called "payment holidays." <u>Begala</u>, 163 F.3d at 949. The plaintiff accepted all nine and paid the extension fees totaling more than $400 for all nine payment holidays. When the plaintiff attempted to make his final payment, he discovered that in addition to the final payment, he owed more than $1,000 of back interest that had accumulated as a result of the nine payment deferrals. <u>Id.</u> at 949-50.

The plaintiff filed a class action complaint alleging that the bank violated TILA for failing to provide new TILA disclosures at each payment holiday deferral. After the District Court granted the bank's motion to dismiss, the Sixth Circuit analyzed whether the payment holiday deferrals constituted refinancings under 12 C.F.R. § 226.20. Relying on the Official Staff Commentary, the Court affirmed the dismissal and held that each of the payment deferrals could not be said to have cancelled the obligation and substituted a new obligation because "it is the very operation of the old obligation -- causing interest to accrue on the postponed payments at the rate of his loan -- to which he objects." <u>Id.</u> at 951. In the case at bar, as in <u>Begala</u>, Plaintiff elected to defer her maturity/payment date on her pawn, upon payment of a charge. It cannot be said that the deferrals cancelled the obligation under the Pawn Ticket and substituted a new obligation. There was only one credit transaction -- the Pawn Ticket -- and the maturity date was postponed. TILA does not require new disclosures upon every deferral.

The reasoning in <u>Dennis</u> has also been criticized by the Eleventh Circuit in <u>Scaife v. Anderson</u>. In <u>Scaife</u>, the Eleventh Circuit stated that an express provision for renewal of a loan evidences that such renewals are not separate transactions. Discussing the <u>Dennis</u> opinion, the Court noted that the contract at issue in <u>Dennis</u> provided for monthly renewals (as does TitleMax's Pawn Ticket with Plaintiff). Believing that the District Court in <u>Dennis</u> should have found that such a provision evidences that renewals were NOT separate transactions or refinancings, the Court stated that an express provision for renewal "would, if anything, suggest that the renewal in that case was part of the original transaction rather than a separate transaction." <u>Scaife</u>, 825 F.2d at 361. Turning to the transaction at issue in <u>Scaife</u>, the Court went further to state that "[f]ar from [the <u>Dennis</u> opinion] dissuading us, the fact that the loan in question [in <u>Scaife</u>] did not expressly provide for renewal in the original document reinforces our conclusion that each renewal was a separate transaction." <u>Id.</u> Therefore, not only does the Eleventh Circuit <u>disagree</u> with the <u>Dennis</u> opinion, it <u>agrees</u> with TitleMax that the fact that the parties expressly contemplate and agree to extensions or renewals of the pawn in the contract evidences that said renewals are not separate transactions.

### III. <u>CONCLUSION</u>

For the forgoing reasons, Plaintiff's deferrals of the maturity date in the Pawn Ticket were not "refinancings" and there was no requirement that TitleMax give additional TILA disclosures every time Plaintiff extended the pawn. The Complaint must therefore be dismissed.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

Respectfully submitted, this 21st day of December, 2006.

                        BURR & FORMAN LLP


                         /s/ Jennifer A. Harris

                        Jennifer A. Harris
                        3100 Wachovia Tower
                        420 North 20th Street
                        Birmingham, Alabama 35203
                        (205) 251-3000 [dial]
                        (205) 458-5100 [telecopier]
                        jharris@burr.com

                              -and-

                        John O'Shea Sullivan
                        Erich N. Durlacher
                        BURR & FORMAN LLP
                        Suite 1100, 171 Seventeenth Street, N.W.
                        Atlanta, Georgia 30363
                        (404) 815-3000 [dial]
                        (404) 817-3244 [telecopier]
                        shea.sullivan@burr.com
                        edurlach@burr.com

                        Attorneys for Defendant TitleMax of Alabama, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| *In re:* | ) | |
| | ) | **Chapter 13** |
| **BERNICE GUNN,** | ) | |
| | ) | **Case No. 06-80646** |
| *Debtor.* | ) | |
| | ) | **Judge William R. Sawyer** |
| _____ | ) | |
| | ) | |
| **BERNICE GUNN,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Adv. Pro. No. 06-08049** |
| | ) | |
| **TITLEMAX OF ALABAMA, INC.,** | ) | |
| **d/b/a TITLEMAX OF ALEXANDER** | ) | |
| **CITY #1,** | ) | |
| | ) | |
| *Defendant.* | ) | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 21st day of December, 2006, a true and correct

copy of the foregoing ***REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS*** has

been served on the following persons by depositing the same in the United States first class mail,

postage prepaid, and addressed as follows:

Harvey B. Campbell, Jr.
CAMPBELL & CAMPBELL, P.C.
P.O. Drawer 756
Talladega, AL 35161

BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
(205) 251-3000 [dial]
(205) 458-5100 [telecopier]
jharris@burr.com

Huel M. Love, Jr.
P.O. Box 1079
Talladega, AL 35161

        /s/ Jennifer A. Harris
Jennifer A. Harris (HAR273)

228663

8

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                                  Case No. 06-80646-WRS
                                                       Chapter 13
BERNICE GUNN,

          Debtor

BERNICE GUNN,

          Plaintiff                                    Adv. Pro. No. 06-8049-WRS

     v.

TITLE MAX OF ALABAMA INC.,

          Defendant

**ORDER GRANTING MOTIONS TO APPEAR *PRO HAC VICE***

Upon consideration of the motions to appear *pro hac vice* filed by John O'Shea Sullivan

(Doc. 10) and Erich N. Durlacher (Doc. 11), it is

ORDERED that the motions are GRANTED.

Done this 24th day of January, 2007.

                                        /s/ William R. Sawyer
                                        United States Bankruptcy Judge


c: Harvey B. Cambell Jr., Attorney for Plaintiff
   John O'Shea, Attorney for Defendant
   Eric N. Durlacher, Attorney for Defendant

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 BANKRUPTCY |
| BERNICE GUNN, | ) | CASE NO:  06-80646 |
| Debtor. | ) | |

| | | |
|---|---|---|
| BERNICE GUNN, | ) | ADVERSARY PROCEEDING |
| Plaintiff, | ) | AP NO: 06-08049 |
| | ) | |
| v. | ) | |
| | ) | |
| TITLEMAX OF ALABAMA, INC. d/b/a | ) | |
| TITLEMAX OF ALEXANDER CITY | ) | |
| # 1, | ) | |
| Defendant. | ) | |

## NOTICE OF APPEAL

**COMES NOW,** the Plaintiff in the above-styled cause and appeals this Court's order dismissing this adversary proceeding dated February 14, 2007.


/s/ Harvey B. Campbell. Jr.
Harvey B. Campbell, Jr.
Attorney for Debtor/Plaintiff
CAMPBELL & CAMPBELL, P.C.
P.O. Drawer 756
Talladega, Al. 35161
(256) 761-1858

/s/ Huel M. Love Jr.
Attorney for Debtor/Plaintiff
P.O. Box 1079
Talladega, Al. 35161
(256) 362-3073


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the Plaintiff's foregoing instrument by mailing the same through the United States Postal Service, First Class Mail, Postage Pre-Paid and/or by electronic mail to the parties listed below on this the 23rd day of February, 2007:

AP ftre # 23

Jennifer A. Harris
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203

John O'Shea Sullivan
Erich N. Durlacher
BURR & FORMAN LLP
Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Georgia 30363

/s/ Harvey B. Campbell, Jr.
Harvey B. Campbell, Jr.
Attorney for Debtor/Plaintiff
CAMPBELL & CAMPBELL, PC

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 13 BANKRUPTCY** |
|     **BERNICE GUNN,** | ) | **CASE NO:  06-80646** |
|       **Debtor.** | ) | |

| | | |
|---|---|---|
| **BERNICE GUNN,** | ) | **ADVERSARY PROCEEDING** |
|     **Plaintiff,** | ) | **AP NO: 06-08049** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TITLEMAX OF ALABAMA, INC. d/b/a** | ) | |
| **TITLEMAX OF ALEXANDER CITY** | ) | |
| **# 1,** | ) | |
|     **Defendant.** | ) | |

**RECORD AND ISSUES ON APPEAL**
**PURSUANT TO BANKRUPTCY RULE 8006**

    Items to be included in the record:

    1.  The Bankruptcy Court adversary proceeding file, including, the complaint, the Defendant's Motion to Dismiss and the order dismissing the adversary proceeding.

    The issues to be presented are:

    1.  The order on the Motion to Dismiss is an abuse of discretion.
    2.  Was the order contrary to the laws?
    3.  Was the order on the Motion to Dismiss contrary to the facts?

                  /s/ Harvey B. Campbell. Jr.
                  Harvey B. Campbell, Jr.
                  Attorney for Debtor/Plaintiff
                  CAMPBELL & CAMPBELL, P.C.
                  P.O. Drawer 756
                  Talladega, Al. 35161
                  (256) 761-1858

                  /s/ Huel M. Love Jr.
                  Attorney for Debtor/Plaintiff
                  P.O. Box 1079
                  Talladega, Al. 35161
                  (256) 362-3073

*AP Stre # 21*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the Plaintiff's foregoing instrument by mailing the same through the United States Postal Service, First Class Mail, Postage Pre-Paid and/or by electronic mail to the parties listed below on this the 5th day of March, 2007:

Jennifer A. Harris
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203

John O'Shea Sullivan
Erich N. Durlacher
BURR & FORMAN LLP
Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Georgia 30363

/s/ Harvey B. Campbell, Jr.
Harvey B. Campbell, Jr.
Attorney for Debtor/Plaintiff
CAMPBELL & CAMPBELL, PC