# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **BERNICE GUNN** ) | **CIVIL ACTION** |
| ) | **FILE NO.: 3:07-cv-00233-WKW** |
| **Debtor,** ) | |
| ) | |
| **BERNICE GUNN,** ) | |
| ) | **On Appeal from the** |
| **Appellant,** ) | **Bankruptcy Court** |
| ) | |
| **v.** ) | **Bankruptcy Case No. 06-80646** |
| ) | |
| **TITLEMAX OF ALABAMA, INC.,** ) | **Adv. Pro. No. 06-08049** |
| **d/b/a/ TITLEMAX OF ALEXANDER** ) | |
| **CITY #1,** ) | |
| ) | |
| **Appellee.** ) | |

## BRIEF AND ARGUMENT OF TITLEMAX/APPELLEE

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

Jennifer A. Harris
BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
(205) 251-3000 [dial]
(205) 458-5100 [telecopier]

John O'Shea Sullivan
Erich N. Durlacher
BURR & FORMAN LLP
Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Georgia 30363
(404) 815-3000 [dial]
(404) 817-3244[telecopier]

Attorneys for Appellee TitleMax of Alabama, Inc.

235296

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ............................................................. 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................... 1

STANDARD OF REVIEW ..................................................................... 1

STATEMENT OF THE CASE .................................................................. 2

STATEMENT OF FACTS ...................................................................... 3

SUMMARY OF ARGUMENT ................................................................. 5

ARGUMENT ................................................................................... 6

    I.     THIS COURT SHOULD AFFIRM THE BANKRUPTCY
          COURT'S DISMISSAL OF THE TRUTH IN LENDING CLAIM
          (COUNT I) BECAUSE NO ADDITIONAL DISCLOSURES
          WERE REQUIRED .................................................................... 6

          A.     The Alabama Pawnshop Act and the Parties' Pawn Ticket
                  Create a Unique Agreement That is Unlike a Conventional
                  Consumer Loan ................................................................ 7

          B.     The Truth in Lending Act Does Not Require New TILA
                  Disclosures Every Time a Pawn Transaction is Renewed or
                  Extended ........................................................................ 9

                1.     The Customer Receipts Were Not Refinancings ........................ 11

                2.     Plaintiff Fails to Address the Deferral Language in
                     the Pawn Ticket ........................................................ 18

    II.    THIS COURT SHOULD AFFIRM THE BANKRUPTCY
          COURT'S DISMISSAL OF THE VALIDITY OF TITLEMAX'S
          LIEN CLAIM (COUNT II) BECAUSE THE SECURITY
          INTEREST GRANTED ON OCTOBER 22, 2005 REMAINS
          VALID ............................................................................ 22

CERTIFICATE OF SERVICE .................................................................. 25

235296

# TABLE OF AUTHORITIES

## Cases

Aulson v. Blanchard, 83 F.3d 1 (1st Cir. 1996) ...........................................................2

Begala v. PNC Bank, Ohio, N.A., 163 F.3d 948 (6th Cir. 1998)...................................10, 17, 18

Blount v. Sterling Healthcare Group, Inc., 934 F. Supp. 13658 (S.D. Fla. 1996).........................2

Dennis v. Handley, 453 F. Supp. 833 (N.D. Ala. 1978)............................................12, 13, 14, 15

Ford Motor Credit Co. v. Milhollin, 444 U.S. 555 (1980) ............................................16

General Trading, Inc. v. Yale Materials Handling Corp., 119 F.3d 1485 (11th Cir. 1997) .........1

In re Bilzerian, 100 F.3d 886 (11th Cir. 1996)...........................................................2

In re DeLorean Motor Co., 991 F.2d 1236 (6th Cir. 1993)..............................................2

In re Ross, 338 B.R. 266 (Bankr. E.D. Pa. 2006) .......................................................14

Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992) ...............................................2

Sciafe v. Anderson, 825 F.2d 357 (11th Cir. 1987) ..................................................13, 15

Williams v. Lear Operations Corp., 73 F. Supp. 2d 1377 (N.D. Ga. 1999) ...............................2

## Statutes

12 C.F.R. § 226.2(a)(10) ...............................................................................9

12 C.F.R. § 226.2(a)(20) ..............................................................................9-10

12 C.F.R. § 226.8(j) ...............................................................................13, 14

12 C.F.R. § 226.17(e) ..............................................................................10, 20

12 C.F.R. § 226.17(f)................................................................................11

12 C.F.R.§ 226.19.....................................................................................11

12 C.F.R. § 226.20..............................................................................13, 14, 17, 20

12 C.F.R. § 226.20, Official Staff Commentary ...................................................16, 20

12 C.F.R. § 226.20(a) ..........................................................................11, 13, 14, 21

12 C.F.R. Pt. 226, Supp. I at § 226.20, References (1990) ...........................................14

15 U.S.C. § 1634 ...................................................................................................... 10, 20

28 U.S.C. § 157 ............................................................................................................... 1

28 U.S.C. § 157(b) ........................................................................................................... 1

28 U.S.C. § 158(a) ........................................................................................................... 1

Ala. Code §§ 5-19A-1 et seq. ......................................................................................... 6

Ala. Code § 5-19A-2(3) ............................................................................................... 3, 7

Ala. Code § 5-19A-3 .................................................................................................... 8, 9

Ala. Code § 5-19A-4 ....................................................................................................... 8

Ala. Code § 5-19A-5 ....................................................................................................... 8

Ala. Code § 5-19A-6 ............................................................................................... 7, 8, 12

Ala. Code § 5-19A-7 ....................................................................................................... 8

Ala. Code § 5-19A-10(a) .............................................................................................. 22

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 2, 3

## STATEMENT OF JURISDICTION

This appeal arises from an Order of Dismissal entered on February 15, 2007 by the Unites States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court"). In the Order of Dismissal, Judge William R. Sawyer granted TitleMax's Motion to Dismiss and ordered that the Adversary Proceeding filed by Plaintiff against TitleMax dismissed with prejudice.

The matter before the bankruptcy court was a core proceeding under 28 U.S.C. § 157(b) since it concerned the administration of the bankruptcy estate and requested the determination of the validity of TitleMax's lien. The district court's appellate jurisdiction arises under 28 U.S.C. § 158(a) because the bankruptcy judge entered a final order in a proceeding referred to him under 28 U.S.C. § 157, and this Court is the District Court for the judicial district in which the bankruptcy judge is serving.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.      Whether the Bankruptcy Court properly dismissed Plaintiff's TILA claims when it held that no additional TILA disclosures were required when Plaintiff renewed and extended her initial pawn, which was accompanied by the required TILA disclosures.

II.     Whether the Bankruptcy Court properly dismissed Plaintiff's claim that TitleMax's lien on her vehicle was invalid because the initial Pawn Ticket granted TitleMax a valid security interest in the Plaintiff's vehicle.

## STANDARD OF REVIEW

A United States District Court reviewing the decision of a United States Bankruptcy Court conducts a de novo review of the Bankruptcy Court's determinations of law. General Trading, Inc. v. Yale Materials Handling Corp., 119 F.3d 1485, 1494 (11th Cir. 1997) (citing In

235296

1

re Bilzerian, 100 F.3d 886, 889 (11th Cir. 1996)).  As the bankruptcy court made no findings of fact, the District Court's standard of review in this appeal is de novo.

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) should be granted when it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.  Linder v. Portocarrero, 963 F.2d 332, 334 (11th Cir. 1992).  See Blount v. Sterling Healthcare Group, Inc., 934 F. Supp. 1365, 1368 (S.D. Fla. 1996).  While the Court must accept the facts pleaded in the complaint as true, the Court need not accept as true conclusory allegations or legal characterizations.  In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993).  As one court has held, courts need not "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited."  Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).  "[B]road conclusory allegations are inadequate even under the liberal pleading rules of the Federal Rules of Civil Procedure."  Williams v. Lear Operations Corp., 73 F. Supp. 2d 1377, 1380-81 (N.D. Ga. 1999).

## STATEMENT OF THE CASE

The Debtor Bernice Gunn (the "Debtor" or "Plaintiff") filed a Chapter 13 Bankruptcy petition on August 18, 2006.  On October 14, 2006, the Debtor filed an Adversary Complaint (the "Complaint") against TitleMax of Alabama, Inc., d/b/a TitleMax of Alexander City ("TitleMax" or "Defendant").  The Complaint alleged that TitleMax had violated the disclosure requirements of the Truth In Lending Act ("TILA") by failing to provide allegedly required TILA disclosures when Plaintiff's pawn transaction was renewed and the maturity date extended.  The Complaint sought damages for TILA violations and also challenged the validity of TitleMax's lien on the Plaintiff's automobile.

On November 17, 2006, TitleMax filed a Motion to Dismiss Plaintiff's Adversary Complaint, alleging that because the required TILA disclosures were provided at the time of the initial pawn transaction, no additional TILA disclosures were required when the maturity date was extended and the pawn transaction was renewed in accordance with the Pawn Ticket. Plaintiff responded to TitleMax's Motion to Dismiss on December 7, 2006 and also filed a supplemental response on January 26, 2007.  On February 15, 2007, the Bankruptcy Court entered an Order granting TitleMax's Motion to Dismiss and dismissing Plaintiff's Complaint with prejudice.  On February 23, 2007, Plaintiff filed a Notice of Appeal of the Order dismissing the Complaint with Prejudice.

## STATEMENT OF FACTS

According to the Complaint,[1] on or about October 22, 2005, Plaintiff entered into a pawn transaction with TitleMax (as defined in Ala. Code § 5-19A-2(3)) under which TitleMax advanced cash to Plaintiff and she pledged to TitleMax the certificate of title to her 1995 Mitsubishi Gallant automobile (the "Vehicle") and granted TitleMax a security interest therein. A true and correct copy of Plaintiff's Pawn Ticket dated October 22, 2005 (the "Pawn Ticket") is attached to the Complaint as well as this Brief as Exhibit A for the Court's convenience. (Complaint, ¶ 7).  The Pawn Ticket further provides that Plaintiff may redeem the Vehicle by paying $579.95 by the maturity date, to wit: November 21, 2005.  (Complaint, ¶ 8; see also Exhibit A).

---

[1] All facts recited herein are taken from the Complaint.  For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the allegations must be taken as true.  TitleMax does not admit any of these allegations and only recites them here to demonstrate that the Complaint should be dismissed.  TitleMax disputes Plaintiff's version of the sequence of events, as well as the underlying facts themselves, but as shown herein, the facts as pled are insufficient to state a claim upon which relief can be granted, and must be dismissed.

Although the Plaintiff conspicuously fails to mention this, the Pawn Ticket has a provision whereby the pawn transaction can be renewed or extended, and the maturity date deferred, under the following circumstances:

> **Redemption and Request for Deferral or Renewal**. The terms of this paragraph will not apply if you do not meet our credit criteria or if the pledged goods have been taken into custody by a court or by a law enforcement officer or agency.  On the Maturity Date or within 30 days thereafter (the "Grace Period"), if you choose not to redeem the pledged goods but request that we continue to hold the pledged goods for an additional thirty days ("Deferral Period"), then we will hold the pledged goods during the Deferral Period in exchange for your payment of the pawnshop charge owing, which may also include a prorated pawnshop charge ("Prorated Pawnshop Charge") for holding the pledged goods through the date of the deferral.  The Deferral Period will run from the date that you make such payment and the new Maturity Date will be the 30th day after such payment. Likewise, if within the 30-day Grace Period after the end of any Deferral Period or subsequent Deferral Period, you request that we continue holding the pledged goods for an additional thirty days, then we will hold the pledged goods during such additional Deferral Period in exchange for such pawnshop charge. **Furthermore, any time before the expiration of any Deferral Period or subsequent Deferral Period, you may choose to redeem or repurchase the pledged goods by paying the amount of cash advanced and the original pawnshop charge, plus any unpaid, Prorated Pawn Charge.**

(See Exhibit A).

The Complaint further alleges that "[s]ubsequent to the execution of [the Pawn Ticket], the Plaintiff and [TitleMax] entered into a series of loan agreements (hereinafter Subsequent Loan Agreement(s)).  With respect to each of these subsequent loan agreements a finance charge was assessed by [TitleMax].  A representative copy of a Subsequent Loan Agreement, dated 7/21/06 is attached to this Adversary Complaint as 'Exhibit C.'"  (Complaint, ¶ 9).  The "Subsequent Loan Agreements" referred to by Plaintiff are actually "Customer Receipts" evidencing the amount of money paid by Plaintiff toward her pawn, and evidencing the renewal of the Pawn Ticket and deferral of the maturity date.  Plaintiff also alleges that "she became indebted to" TitleMax whenever she signed a Customer Receipt.  Appellant's Brief at 4.  The Customer Receipts do not evidence the creation of any new indebtedness, but do evidence the

extension and renewal of the initial Pawn Ticket, and specifically reference the Pawn Ticket's deferral/renewal provisions. The Customer Receipts that Plaintiff calls the "Subsequent Loan Agreements," refer back to the deferral/renewal provisions of the Pawn Ticket as follows:

> You are only required to pay the Interest Due amount in order to extend or renew the Pawn Ticket. Your next payment due date is indicated above in the Interest Due Date block. The length of your Pawn Ticket is 30 days and can only be renewed or extended with the agreement of both parties and only for 30-day incremental periods.
>
> By signing below, the customer acknowledges that payment information above is accurate and that any amount shown in the Interest Due block above must be paid in 30 days.

A true and correct copy of Plaintiff's Customer Receipt dated July 21, 2006 is attached to the Complaint as well as this Brief as Exhibit B for the Court's convenience.

Plaintiff claims that TitleMax's alleged failure to make various disclosures under TILA with respect to the "Subsequent Loan Agreements," which were all Customer Receipts, constitute violations of TILA.[2]  (Complaint, ¶¶ 10-13).  Plaintiff also claims that she did not pledge the Vehicle as security in connection with the "Subsequent Loan Agreements" such that TitleMax has no security interest in the Vehicle, and each of Plaintiff's payments to TitleMax were in violation of the Alabama Pawnshop Act.  (Complaint, ¶ 14).  There is no allegation that the security interest granted by Plaintiff in the original Pawn Ticket was ever satisfied or cancelled.

## SUMMARY OF ARGUMENT

All of the claims asserted in Plaintiff's Adversary Complaint are based on the incorrect premise that Plaintiff entered into several, separate loan transactions with TitleMax. Plaintiff's theory is belied by the very contract she attached to her Complaint, which clearly demonstrates

---

[2]  Plaintiff does not contend that TitleMax violated TILA in connection with the original October 22, 2005 Pawn Ticket.

that what Plaintiff contends were separate, subsequent loan transactions were actually renewals and extensions of the original pawn transaction. Both TILA and the Alabama Pawnshop Act, Ala. Code §§ 5-19A-1 et seq., also support TitleMax's analysis. Because there were only renewals and extensions of the initial Pawn Ticket, not separate and subsequent loan transactions, additional TILA disclosures were not required.

Plaintiff also claims that TitleMax's lien on her automobile is invalid even though the Plaintiff expressly granted TitleMax a security interest in the Vehicle when executing the Pawn Ticket. Plaintiff incorrectly asserts that because the Customer Receipts she executed when extending and renewing her pawn did not explicitly restate a grant of a security interest, the security interest initially granted by Plaintiff in the Pawn Ticket must no longer be valid. To the contrary, there is no allegation that the security interest was ever satisfied or cancelled and both the Alabama Pawnshop Act and the Pawn Ticket itself contemplate renewals of the Pawn Ticket and extensions of the Maturity Date. Because the Vehicle was never redeemed, and the pawn was never cancelled or extinguished, the grant of the security interest in the Pawn Ticket remains valid and enforceable and Plaintiff's position on the security interest is merely a bootstrap of her incorrect TILA claim.

## ARGUMENT

**I.    THIS COURT SHOULD AFFIRM THE BANKRUPTCY COURT'S DISMISSAL OF THE TRUTH IN LENDING CLAIM (COUNT I) BECAUSE NO ADDITIONAL DISCLOSURES WERE REQUIRED.**

Plaintiff cannot state a claim for TILA violations. Plaintiff's hypothesis that she entered into "Subsequent Loan Agreements" following the original Pawn Ticket on October 22, 2005 is factually and legally incorrect. Her theory is undermined by the very Pawn Ticket she agreed to and signed, and no law or other requirement obligated TitleMax to give new TILA disclosures every time the Pawn Ticket was renewed and the maturity date deferred. TitleMax does not

dispute that the initial pawn transaction was in fact a credit transaction which is subject to TILA and Plaintiff likewise does not dispute that TitleMax provided the required TILA disclosures at the time of the initial pawn transaction.  However, contrary to Plaintiff's assertions, the parties' renewals of the Pawn Ticket did not create new or subsequent "loan agreements" and TILA did not require TitleMax to constantly re-disclose or update the information that was previously disclosed on October 22, 2005.  In fact, the Pawn Ticket itself provides for renewals and deferrals of the maturity date, and the Alabama Pawnshop Act likewise contemplates extensions/renewals of the same pawn transaction.  Before turning to the law under TILA, it is important for the Court to understand how both the Alabama Pawnshop Act, and the parties' Pawn Ticket, work mechanically.

A.     **The Alabama Pawnshop Act And The Parties' Pawn Ticket Create A Unique Agreement That Is Unlike A Conventional Consumer Loan.**

Under the Alabama Pawnshop Act, a "pawn transaction" is defined as "[a]ny loan on the security of pledged goods or any purchase of pledged goods on condition that the pledged goods are left with the pawnbroker and may be redeemed or repurchased by the seller for a fixed priced within a fixed period of time."  Ala. Code § 5-19A-2(3).  Alabama law is clear that the pledgor/customer is not obligated to redeem the pledged goods or make any payment on a pawn transaction.  See Ala. Code § 5-19A-6.  Therefore, although termed a "loan," the customer is not personally liable for the amount of money loaned, but stands to lose his/her pledged goods, i.e., the Vehicle in this case, if the pawn is not paid in accordance with the terms thereof.  The Pawn Ticket in this case is clearly a "pawn transaction" as defined under the Alabama Pawnshop Act because by its terms, it was a loan to Plaintiff on the security of the Vehicle which may be redeemed for a fixed price within a fixed period of time, i.e., the maturity date.  (See Exhibit A). Pursuant to the Pawnshop Act and the Pawn Ticket, the customer/pledgor forfeits title to the

pledged goods if they are not redeemed, i.e., paid for, within 30 days following the maturity date.

See Ala. Code § 5-19A-6.  If the goods are not redeemed, "absolute right, title, and interest in

and to the goods shall vest in the pawnbroker."  Id.

The Pawnshop Act and the Pawn Ticket also allow deferrals or extensions of the maturity

date.  Ala. Code § 5-19A-7 states as follows:

> (a)  A pawnbroker may contract for and receive a pawn shop charge in lieu of interest or other charges for all services, expenses, costs, and losses of every nature but not to exceed 25 percent of the principal amount, per month, advanced in the pawn transaction.
>
> (b)  Any interest, charge, or fees contracted for or received directly or indirectly, in excess of the amount permitted under subsection (a) shall be uncollectible and the pawn transaction shall be void. The pawnshop charge allowed under subsection (a) shall be deemed earned, due, and owing as of the date of the pawn transaction and a like sum shall be deemed earned, due, and owing on the same day of the succeeding month.

Ala. Code § 5-19A-7.  These provisions are important for a few reasons.  First, the statute

authorizes a pawnshop charge which is deemed "earned, due, and owing" on the same day of

succeeding months of the same pawn transaction.  Clearly therefore, the statute contemplates one

pawn transaction going to subsequent months and subsequent pawn periods.  Second, while these

provisions provide for extensions and renewals of the same pawn transaction, it is important to

note that the statute does not require TitleMax to create separate or additional pawn tickets for

the "succeeding months," although the statute is very specific and stringent about the

requirement of a pawn ticket and its contents at the outset of a pawn transaction.  See  Ala. Code

§§ 5-19A-3, 5-19A-4, and 5-19A-5.

The parties' Pawn Ticket provides for extensions or renewals of the Pawn Ticket.  The

paragraph in the middle of page 4 of the Pawn Ticket, which is set forth in its entirety in the

Statement of Facts above, states clearly that Plaintiff may choose not to redeem the Vehicle on

the maturity date, and may instead elect to extend the pawn and defer the maturity date upon

payment of a pawnshop charge.  Upon renewal, the new maturity date of the <u>same</u> pawn transaction is deferred to become 30 days after the date on which Plaintiff pays the pawnshop charge to elect the deferral.  Indeed, the Customer Receipt which evidences the deferral, states that the pawn can only be renewed or extended in 30-day incremental periods and upon payment of the interest due, which is the pawnshop charge.  Importantly, Plaintiff agreed that at anytime before the expiration of any deferral period, Plaintiff may choose to redeem the pledged goods by paying back the amount of cash advanced, plus any unpaid, prorated pawnshop charge.  (<u>See</u> Exhibit A, p. 4).  Clearly, therefore, the parties' agreement was to extend the maturity date under the same pawn transaction under certain conditions, and make all terms of the same Pawn Ticket apply.  A new pawn ticket is not required in the extensions and renewals -- pawn tickets are only required "at the time of making the pawn."  <u>See</u> Ala. Code § 5-19A-3.  Therefore, Alabama law and the Pawn Ticket are very clear that the Subsequent Loan Agreements that Plaintiff alleges required new TILA disclosures were actually extensions of the original pawn transaction which, as shown below, merely deferred the maturity date 30 days later and did not require new TILA disclosures every month.

**B.** **The Truth In Lending Act Does Not Require New TILA Disclosures Every Time A Pawn Transaction Is Renewed Or Extended.**

The Truth In Lending Act does not require TitleMax to re-disclose or update the TILA disclosures every time the maturity date is extended in a pawn transaction.  In closed-end transactions[3] such as the Pawn Ticket, TILA requires the disclosures to be made as of the time

---

[3]  Closed-end credit is defined under TILA to mean consumer credit other than open-end credit as defined in the regulations.  12 C.F.R. § 226.2(a)(10).  Open-end credit is credit under a plan where, <u>inter alia</u>, the amount of credit that may be extended to the consumer up to a limit during the term is generally made available to the extent that any outstanding balance is repaid.  12 C.F.R. § 226.2(a)(20).  Pawn transactions are clearly closed-end credit because there is only one cash advance to the consumer and the consumer does not have a credit line to draw upon.

the credit is extended, and it is as of that time that the adequacy and accuracy of the disclosures

are measured.  See Begala v. PNC Bank, Ohio, N.A., 163 F.3d 948, 950 (6th Cir. 1998).  As

demonstrated above, the so-called "Subsequent Loan Agreements" were not separate loan

agreements at all -- they were continuations and extensions of the original Pawn Ticket.

Therefore, the issue under TILA is whether the statute and implementing regulations create any

post-consummation duty of disclosure in a pawn transaction where the maturity date is routinely

extended by the parties every 30 days.

Under TILA, subsequent events generally do not affect the validity of initial disclosures

or require the creditor to make further disclosures.  In 15 U.S.C. § 1634, TILA provides as

follows:

> Effect of subsequent occurrence.  If information disclosed in accordance with this
> part is subsequently rendered inaccurate as the result of any act, occurrence, or
> agreement subsequent to the delivery of the required disclosures, the inaccuracy
> resulting therefrom does not constitute a violation of this part.  [emphasis added].

15 U.S.C. § 1634.   The regulations further clarify the narrow circumstances when subsequent

disclosures are required, as follows:

> Effect of subsequent events.  If a disclosure becomes inaccurate because of an
> event that occurs after the creditor delivers the required disclosures, the
> inaccuracy is not a violation of this regulation, although new disclosures may be
> required under paragraph (f) of this section, § 226.19, or §226.20.

12 C.F.R. § 226.17(e).  Therefore, it is clear that the extensions of the Pawn Ticket, which were

by agreement of the parties, do not trigger a duty on TitleMax to give new disclosures or update

the original disclosures.  As shown below, all of the exceptions listed above in § 226.17(e) are

inapplicable here.

The first exception, § 226.19, deals with certain residential mortgage and variable rate

transactions – neither of which is relevant in a pawn transaction.  Second, § 226.17(f) deals with

situations where early disclosures given before consummation are rendered inaccurate by a

subsequent event <u>before</u> consummation, and is thus inapplicable here.    The only relevant exception in this case is the third -- § 226.20(a) -- which deals with "refinancings."[4]  Plaintiff has argued that the Customer Receipts qualified as refinancings under TILA and therefore required subsequent TILA disclosures.   However, the definition of refinancings demonstrates that this exception is also inapplicable here.

### 1.    The Customer Receipts Were Not Refinancings

"Refinancings" is defined in the regulations as follows:

> A refinancing occurs when an existing obligation that was subject to this subpart is <u>satisfied and replaced by a new obligation</u> undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. The new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation.

12 C.F.R. § 226.20(a) (emphasis added).   Refinancings are therefore limited to transactions where the original credit or obligation is "satisfied and replaced by a new obligation."   An extension of the maturity date does not <u>satisfy</u> the pawn transaction, nor does it create a <u>new obligation</u>.[5]  A deferral of the maturity date merely postpones the date on which the pledgor must

---

[4]   The refinancing exception itself contains an exception for the renewal of single payment obligations with no change in the original terms.  <u>See</u> 12 C.F.R. § 226.20(a).  Such transactions are not subject to the refinancing exception that would otherwise require new TILA disclosures.   While this exception may be further authority for TitleMax to omit TILA disclosures upon renewals of the Pawn Ticket, TitleMax argues that the renewals were not refinancings at all and has not invoked this exception to the refinancings exception in this case, making Plaintiff's discussion of it irrelevant to this case.  (Appellant's Brief, p. 8).  Contrary to Plaintiff's assertions, the fact that the transactions in this case may not qualify for this exception to the refinancings rule does not then mean that TILA required new disclosures upon renewal of the pawn.  As Plaintiff fails to realize, the renewals must first be "refinancings" to trigger a duty to give subsequent TILA disclosures.

[5]   Indeed, a consumer is not obligated to do anything in a pawn transaction because the pledgor is not personally obligated to pay the pawnshop.  <u>See</u> Ala. Code § 5-19A-6.  Therefore, although pawn transactions do not fit nicely anywhere in TILA's framework governing "credit" in the first place, it is clear that the pawn obligation is not "satisfied" by a renewal of, or deferral of the maturity date in, the same pawn transaction.

redeem the Vehicle and extends the initial pawn ticket.  The Customer Receipt evidencing the extension notifies the pledgor of the new maturity date and invokes the Pawn Ticket, stating that the length of the Pawn Ticket is 30 days and can only be extended for 30-day incremental periods.

A refinancing, on the other hand, occurs when a new loan is made (by a new lender or the original) to pay off and replace the former loan.  In a true refinance, the parties execute new agreements whereby the borrower agrees to repay the new amount being advanced.  The amount advanced is used to pay the old debt.  By way of example, refinancings occur often in the residential mortgage industry whereby a consumer's mortgage loan is paid off, cancelled, and replaced by the new loan and new mortgage documents.  Clearly in this example, the new lender that pays off and satisfies the old loan is required to provide TILA disclosures concerning the new loan.  By contrast, TitleMax's agreement to bump the maturity date originally established in the Pawn Ticket 30 days through the payment of a pawnshop charge authorized under Alabama law is not a refinancing and does not require new TILA disclosures.  The parties did not execute a new agreement or new pawn ticket, and indeed, the original Pawn Ticket is invoked in the Customer Receipt indicating the parties' intent to continue under the Pawn Ticket.

The authority relied upon by Plaintiff is no longer good law and Plaintiff is left with no legal support for her position.  To support her TILA claims, Plaintiff relies primarily on a 1978 case, Dennis v. Handley, 453 F. Supp. 833 (N.D. Ala. 1978).  In Dennis, the plaintiff pawned a diamond ring with the defendant, and the parties renewed the pawn from time to time over the course of 15 or more months.  The Court found that the plaintiff was entitled to Truth In Lending disclosures with each renewal of the pawn, because as it read in 1978, the Court found that

Regulation Z, 12 C.F.R. § 226.8(j), provided that the pawn renewals were "refinancings." Dennis, 453 F. Supp. at 835.

While TitleMax (and the Eleventh Circuit as shown below) believes that Dennis was incorrectly decided, it makes no difference because the opinion was abrogated by the FRB's amendment to Regulation Z in 1981.   After Dennis was decided, Regulation Z was amended to remove the provision relied upon by the Court in Dennis, and to provide a definition for "refinancings" where none had existed before, effective October 1, 1982.  In 1978, when Dennis was decided, the only pertinent language on refinancings in Regulation Z was as follows:

> (j) *Refinancing, Consolidating or Increasing.*  If any existing extension of credit is refinanced, or two or more existing extensions of credit are consolidated, or an existing obligation is increased, such transaction shall be considered a new transaction subject to the disclosure requirement of this part.

Sciafe v. Anderson, 825 F.2d 357, 359 (11th Cir. 1987) (quoting pre-1981 Reg. Z, 12 C.F.R. § 226.8(j)).  The 1981 Regulation Z amendment deleted this provision and added, inter alia, the following new provision which defines "refinancings":

> (a) *Refinancings.*   A refinancing occurs when an existing obligation that was subject to this subpart is **satisfied and replaced by a new obligation** undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer.   The new finance charge shall include any other portion of the old finance charge that is not credited to the existing obligation.

Scaife, 825 F.2d 359 (quoting post-1981 Reg. Z, 12 C.F.R. § 226.20) (emphasis added). Therefore, when Dennis was decided, refinancings was not defined to mean an obligation which is satisfied and replaced by a new obligation, and the result in Dennis would have been different under § 226.20(a) since the diamond pawn in that case was not satisfied and replaced by a new obligation.  Indeed, the opinion describes the redemption of the pawn in Dennis by stating that the plaintiff paid the original $200 principal and $400 in finance charges, showing there was no previous satisfaction and replacement.

Courts have acknowledged the effect of the 1981 changes to Regulation Z on the definition of refinancings. One court that examined the differences between the old and the amended provisions on "refinancings" found that the old version of the regulation was broad, while the new regulation is narrow, as follows:

> Notably § 226.20(a) superseded 12 C.F.R. § 226.8(j) which contained a broader definition of refinancing: 'If any existing extension of credit is refinanced, or two or more existing extensions of credit are consolidated, or an existing obligation is increased, such shall be considered a new transaction subject to the disclosure requirements of this part.' 12 C.F.R. 226.8(j) (rescinded in 1982). Explaining the new § 226.20, the Official Staff Interpretation states: '1981 changes: While the previous regulation treated virtually any change in terms as a refinancing requiring new disclosures, **this regulation limits refinancings to transactions in which the entire original obligation is extinguished and replaced by a new one.** 12 C.F.R. Pt. 226, Supp. I at § 226.20, References (1990).'

In re Ross**,** 338 B.R. 266, 272 (Bankr. E.D. Pa. 2006) (emphasis original). While Plaintiff cites the amended Regulation Z and its definition of refinancings that did not exist when Dennis was decided, she dodges the fact that Dennis was decided before Regulation Z was amended. In short, the Dennis case, in addition to being wrongly decided, has been abrogated by amendments to Regulation Z some 25 years ago, rendering Dennis inapplicable and obsolete because it was decided under former law.[6]

Even more importantly, the 11th Circuit has criticized the Court's reasoning in Dennis, stating that the fact that the pawn contract at issue in Dennis contained language that

---

[6]    Plaintiff's only attempt to address the fact that Dennis has been abrogated by the FRB amendments is her curious assertion at the very end of her Brief that Dennis was "only abrogated by Revised Regulation Z for a narrow class of single-payment loans which do not change the material terms of the original debt." (Appellant's Brief, p. 12). Evidently referring to the exception to the refinancings rule addressed by TitleMax in footnote 4 above, Plaintiff completely ignores that the entire definition of refinancings was enacted with the 1981 amendments. The definition changed the law on which Dennis was decided and makes Dennis obsolete. Plaintiff has no answer for this and it is patently clear that Dennis is not good law and would be contrary to the Regulations, if followed after 1981, which no Court has done in a published decision.

contemplated renewals "would, if anything, suggest that the renewal in that case was part of the original transaction rather than a separate transaction." Sciafe, 825 F.2d at 361. Turning to the transaction at issue in Sciafe, the Court went further to state that "[f]ar from [the Dennis opinion] dissuading us, the fact that the loan in question [in Sciafe] did not expressly provide for renewal in the original document reinforces our conclusion that each renewal was a separate transaction." Id. Therefore, not only does the Eleventh Circuit reject the Dennis opinion, it agrees with TitleMax that when parties expressly contemplate and agree in the contract to extensions or renewals of the pawn, said renewals are not separate transactions, but are mere continuations of the original contract. Because the Sciafe court indicated the renewals of the pawn contract at issue in Dennis were a part of the "original transaction," it is clear that if Dennis were decided under the amended Regulation Z, an entirely different result would have been reached.

The FRB's amendment to Regulation Z provides a concrete definition which clearly places an extension of a pawn transaction outside the definition of refinancing and therefore outside the provisions requiring subsequent TILA disclosures. The Pawn Ticket in this case provides for deferral of the maturity date and extension of the pawn at Plaintiff's election. If Plaintiff wanted to extend the pawn for an additional 30 days, she could choose to do so by paying the specified charges and the maturity date would be deferred. (See Exhibit A, p. 4). According to the parties' agreement, therefore, when Plaintiff elected to defer the maturity date, the pawn was extended. Upon the deferrals, the pawn was not "satisfied and replaced" by a new pawn. TitleMax did not advance Plaintiff any money to pay off the original pawn, and there was nothing to indicate that the original Pawn Ticket was satisfied, canceled or replaced. If the pawn is extended, it cannot also be satisfied and replaced -- it is the same pawn. Therefore, the

deferrals that Plaintiff elected during the life of her pawn were not refinancings under TILA and

no new TILA disclosures were required.

The FRB's Official Staff Commentary on the 1981 amendments to the refinancings

sections is determinative.[7]    The Official Commentary states as follows with respect to

refinancings:

> 1.    Definition.  A refinancing is a new transaction requiring a complete new
> set of disclosures.  <u>Whether a refinancing has occurred is determined by reference
> to whether the original obligation has been satisfied or extinguished and replaced
> by a new obligation, based on the parties' contract and applicable law.</u>  The
> refinancing may involve the consolidation of several existing obligations,
> disbursement of new money to the consumer or on the consumer's behalf, or the
> rescheduling of payments under an existing obligation.  <u>In any form, the new
> obligation must completely replace the prior one.</u>
>
> .  **Changes in the terms of an existing obligation, such as the deferral of
> individual installments, will not constitute a refinancing unless accomplished
> by the cancellation of that obligation and the substitution of a new obligation.**
>
> . . .
>
> 2.    Exceptions.  <u>A transaction is subject to § 226.20(a) only if it meets the
> general definition of a refinancing.</u> . . .

Official Staff Commentary, § 226.20 (emphasis added).  The Official Commentary therefore

makes clear that to be a refinancing, it is imperative that a new obligation completely replace the

prior one, and changes in the terms of an existing obligation <u>such as the deferral of individual

installments</u> do not constitute a refinancing unless there is a cancellation of the existing

obligation.  The Pawn Ticket at issue was renewed.  It was extended.  The maturity date was

deferred.  The Pawn Ticket survived the deferral and was never cancelled.  A new pawn contract

---

[7] The FRB Commentary must be followed.  Even if the FRB was not relying on plain and unambiguous language in the regulation, its interpretation of the regulation would still have to be given great deference and followed unless it were "demonstrably irrational."  <u>Ford Motor Credit Co. v. Milhollin</u>, 444 U.S. 555, 557, 559-60, 565 (1980).  The FRB's interpretation is perfectly rational and has been followed by the Courts.

did not substitute and replace the original one.  What Plaintiff calls the "Subsequent Loan Agreements" with TitleMax therefore were nothing more than receipts to evidence payment under the same pawn she originally entered and the Official Staff Commentary makes it clear that no new TILA disclosures were required.

Courts have also found similar situations to be outside the definition of refinancings.  For example, in Begala, the plaintiff had a 60 month car loan with the defendant bank.  Begala, 163 F.3d at 950.  Over the life of the loan, the bank sent nine unsolicited letters to the plaintiff offering one month extensions, or deferrals, of his loan, called "payment holidays."  Id. at 949.  The plaintiff accepted all nine and paid the extension fees totaling more than $400 for all nine payment holidays.  Id.  When the plaintiff attempted to make his final payment, he discovered that in addition to the final payment, he owed more than $1,000 of back interest that had accumulated as a result of the nine payment deferrals.  Id. at 949-50.

The plaintiff filed a class action complaint alleging that the bank violated TILA for failing to provide new TILA disclosures at each payment holiday deferral.  Id.  After the District Court granted the bank's motion to dismiss, the Sixth Circuit analyzed whether the payment holiday deferrals constituted refinancings under 12 C.F.R. § 226.20.  Id.  Relying on the Official Staff Commentary, the Court affirmed the dismissal and held that each of the payment deferrals could not be said to have cancelled the obligation and substituted a new obligation because "it is the very operation of the old obligation -- causing interest to accrue on the postponed payments at the rate of his loan -- to which he objects."  Id. at 951.  In the case at bar, as in Begala, Plaintiff elected to defer her maturity/payment date on her pawn, upon payment of a charge.  It cannot be said that the deferrals cancelled the obligation under the Pawn Ticket and substituted a new obligation.  There was only one credit transaction -- the Pawn Ticket -- and the maturity date was

postponed.  Now, just as in <u>Begala</u>, "it is the very operation of the old obligation" to which

Plaintiff objects.  Simply put, TILA does not require new disclosures upon every deferral.

### 2.    Plaintiff Fails To Address The Deferral Language In The Pawn Ticket

Plaintiff asserts that because certain of the terms stated in the Pawn Ticket did not exactly

correspond to the terms listed in the Customer Receipt, there was something more than a mere

renewal of the Pawn Ticket.  Plaintiff claims that she "borrowed" $500 in the original pawn

transaction with a charge of $79.95.  She claims that the Customer Receipt evidences that she

"borrowed" $399.82 with a charge of $63.93.  Plaintiff concludes this is a refinancing because,

according to her, the Pawn Ticket "contains no material terms whatsoever which are common to

[the Customer Receipt]."  (Appellant's Brief, p. 9).  Putting aside that under a pawn transaction,

there is no personal liability of the pledgor and thus no "debt,"[8] Plaintiff makes the illogical leap

that because the monetary amounts of the Customer Receipts and the Pawn Ticket are not

exactly the same, there must have been a "refinancing" at some point between the two dates.

Plaintiff's entire argument is a bootstrap and ignores the fact that the parties agreed to

deferrals of the maturity date, upon payment of a pawnshop charge, in 30 day increments.  The

position also ignores the fact that she elected, as many pawn customers do, to pay amounts in

addition to the minimum pawnshop charge necessary to extend the pawn.  Many customers will

pay more than is necessary to reduce future interest charges.  The Customer Receipt merely

evidences the reductions in the principal amount and credit for the pawnshop charge, expressed

in terms of interest.  The partial payment of principal does not make a refinancing.  It has nothing

---

[8] Plaintiff's assertion that upon the signing of the Customer Receipts "she became indebted" to TitleMax is incorrect.  First, as stated above, there is no "debt" as there is no personal liability.  Second, as stated above, the Customer Receipts were not new loan transactions but instead were mere extensions and renewals of the Pawn Ticket.  Contrary to Plaintiff's assertion, no "new" indebtedness was created by the issuance of the Customer Receipts.

to do with whether the amount of the debt created by the original Pawn Ticket was "satisfied and replaced."  Just as a promissory note is not "refinanced" by the borrower's payments that are in addition to what is scheduled in the note, Plaintiff's efforts to reduce the principal in connection with renewals were not refinancings.

Plaintiff next contends that the Customer Receipt is a "demand note with no associated Truth in Lending disclosures."  (Appellant's Brief, pp. 9-10).  Plaintiff's entire argument that the extensions of the Pawn Ticket were refinancings essentially relies on this premise that the "Subsequent Loan Agreements" were independent and new loan agreements that canceled the prior one.  To the contrary, the Customer Receipt contains no language obligating Plaintiff to pay anything, nor does it cancel or relieve the customer from the terms set out in the Pawn Ticket (other than the balances as evidenced in the Customer Receipt).  More importantly, the Customer Receipt does not state that TitleMax is loaning or advancing Plaintiff any money.  Instead, it evidences the reduction of the prior balance that originated in the original Pawn Ticket.  It states that Plaintiff is paying interest to "extend or renew the Pawn Ticket."  It recites the amount of the payment (being made per the Pawn Ticket) being evidenced, the new maturity date (i.e., the "next payment" -- what does "next" mean if this is a new obligation?), and the total amount due under the original "Pawn Ticket" which is referenced several times.

The Customer Receipt also clearly states that the original Pawn Ticket is being renewed and gives instructions on how to renew it again 30 days later.  Plaintiff fails to mention that the Customer Receipt expressly refers to the Pawn Ticket, and the language in the Receipt, which the Court can read for itself, clearly does not support Plaintiff's theory that the Customer Receipt was a new obligation that satisfied and replaced the Pawn Ticket.  The Customer Receipt clearly states, just above Plaintiff's signature, "you are only required to pay the Interest Due amount in

order to extend or renew the Pawn Ticket . . . the length of your Pawn Ticket is 30 days and can only be renewed or extended with the agreement of both parties and only for 30-day incremental periods." Plaintiff's assertion that the Customer Receipt is anything other than evidence of the extension of the original Pawn Ticket is disingenuous and is belied by the very documents that she relies on.

Moreover, as demonstrated by TitleMax previously, TILA does not require new disclosures simply because the original TILA disclosures were rendered inaccurate by subsequent events. See 15 U.S.C. §§ 1634; 12 C.F.R. § 226.17(e). To establish that there was a refinancing, Plaintiff must somehow show that extensions of the maturity date and partial payments of principal constitute a refinancing as defined in 12 C.F.R. § 226.20 which requires that an existing obligation be "satisfied and replaced by a new obligation." As stated above, the FRB's Official Staff Commentary on the definition of refinancing clearly states that "changes in the terms of an existing obligation, such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation." Official Staff Commentary, Section 226.20. Therefore, Plaintiff's partial payments when extending the maturity date of the pawn transaction was not a refinancing, and no new TILA disclosures were needed. The situation is analogous to a home loan where a customer makes monthly payments of principal and interest, and makes periodic additional payments of principal to pay down the loan faster. If Plaintiff's argument is accepted, then paying more principal than is required under the payment schedule would constitute a refinancing. Such an outcome would defy the law and common sense. In either situation, no new TILA disclosures are required under the subsequent event doctrine because the making of additional payments of principal simply does not constitute a refinancing.

Finally, Plaintiff incorrectly relies on the fact that TitleMax's computer software system places numbers in the fields denominated "account number" and "original account number" in the Customer Receipt and Pawn Ticket. Plaintiff contends that the Customer Receipt was a "refinancing" under TILA because the "account number" and "original account number" fields are different in the Pawn Ticket. First and foremost, Plaintiff has the burden of demonstrating that her election to renew the pawn and extend the maturity date under the Pawn Ticket was a refinancing as defined under 12 C.F.R. § 226.20(a) which requires that a new obligation satisfy and replace an existing obligation. Putting aside that there is no obligation in a pawn transaction, the fact that TitleMax uses a unique numbering system has no bearing on whether the Customer Receipt satisfied and replaced the Pawn Ticket. Plaintiff is asking the Court to essentially assume what is not alleged (and cannot be alleged) -- that TitleMax assigns an account number to a customer when the pawn is opened and is given a new account number when a new pawn satisfies and replaces an old one. This is simply not the case and there is nothing to suggest this in the documents.

These software fields are merely a numbering function that TitleMax uses to count pawn and renewal transactions. They are not account numbers in the sense that Plaintiff asserts -- they are not loan numbers or customer numbers. They are automatically assigned sequentially by the computer each time a TitleMax customer renews a pawn or enters an original pawn transaction whereby cash is advanced. TitleMax tracks its pawns by customer name and TitleMax branch, not account number. The account numbers are purely software related and used for statistical purposes, and are not at all related to the terms of the agreement with the customer. Plaintiff does not state a claim for TILA violations simply because TitleMax's computer system places different numbers in these fields, and indeed, TitleMax should not be required to engage in

expensive litigation simply because it uses sequential transaction numbers in its documents. The standard that Plaintiff is required to show is that the deferrals/renewals "satisfied and replaced" the original Pawn Ticket. The Pawn Ticket specifically contemplated renewals/deferrals and the Customer Receipt specifically referenced and invoked this procedure. Therefore, sequential numbers assigned by a computer software program cannot create a "refinancing" under Regulation Z, and the Bankruptcy Court's dismissal with prejudice of Plaintiff's claims should be affirmed.

II.    **THIS COURT SHOULD AFFIRM THE BANKRUPTCY COURT'S DISMISSAL OF THE VALIDITY OF TITLEMAX'S LIEN CLAIM (COUNT II) BECAUSE THE SECURITY INTEREST GRANTED ON OCTOBER 22, 2005 REMAINS VALID.**

Plaintiff alleges that because the Customer Receipts that she refers to as Subsequent Loan Agreements did not contain a grant of a security interest, TitleMax does not have a security interest in her Vehicle. Plaintiff does not explain, however, what happened to the security interest that she granted in the Pawn Ticket. Plaintiff ignores the provision of the Alabama Pawnshop Act which states that "[a] pawnbroker shall have a lien on the pledged goods for the money advanced and the pawnshop charge owed." Ala. Code § 5-19A-10(a). Plaintiff cites to the Alabama Pawnshop Act as supporting her claim that the security interest originally granted in the Pawn Ticket has been extinguished by the subsequent Customer Receipts on the grounds that the Customer Receipts evidence "other debts due to the pawnbroker" and thus are not secured by the Plaintiff's vehicle. (Appellant's Brief, p. 10). As stated above, however, there has not been any "additional debt" because the pawn was extended, not satisfied and replaced. Plaintiff never redeemed the Vehicle. She never obtained possession of the Title, and she does not make such an allegation. As such, the security interest granted in the initial Pawn Ticket was never cancelled and remains a valid lien on the Vehicle.

235296                                                    22

Plaintiff's theory that the security interest vanished is simply based on a mischaracterization of the contract and law. As demonstrated above, the Pawn Ticket contemplated renewals of the pawn and extensions of the maturity date. Plaintiff's allegations, coupled with the documents, demonstrate that she indeed renewed the pawn and extended the maturity date as recently as July 21, 2006. Because the Vehicle was never redeemed, and the pawn was never cancelled or extinguished, the grant of security interest from the October 22, 2005 Pawn Ticket remains valid and enforceable. There is simply no set of facts under which Plaintiff can show that TitleMax violated the Alabama Pawnshop Act by not obtaining in each Customer Receipt a specific re-grant of the same security interest that TitleMax already had. There is simply nothing to show that the original grant of security interest expired or otherwise was cancelled. Plaintiff's "kitchen sink" claim that TitleMax has no security interest in the Vehicle contradicts the agreement and the law and fails to state a claim upon which relief can be granted.

Respectfully submitted, this 16th day of April, 2007.


BURR & FORMAN LLP


/s/ Jennifer A. Harris
Jennifer A. Harris
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
(205) 251-3000 [dial]
(205) 458-5100 [telecopier]
jharris@burr.com

-and-

John O'Shea Sullivan
Erich N. Durlacher
BURR & FORMAN LLP

Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Georgia 30363
(404) 815-3000 [dial]
(404) 817-3244[telecopier]
edurlach@burr.com
shea.sullivan@burr.com

Attorneys for Appellee TitleMax of Alabama, Inc.

235296

24

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 16th day of April, 2007:

Harvey B. Campbell, Jr.
CAMPBELL & CAMPBELL, P.C.
P.O. Drawer 756
Talladega, AL 35161

Huel M. Love, Jr.
P.O. Box 1079
Talladega, AL 35161


/s/ Jennifer A. Harris
Jennifer A. Harris


BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
(205) 251-3000 [dial]
(205) 458-5100 [telecopier]
jharris@burr.com

235296

EXHIBIT A

| Title Pledge Record No.: 1364693 | | Pawn Ticket | | Transaction Date: 10/22/2005 | |
|---|---|---|---|---|---|
| PAWNBROKER: NAME TitleMax of Alabama, Inc. d/b/a TITLEMAX OF ALEXANDER CITY | | PHONE NUMBER (256) 215-6662 | | | FAX NUMBER (256) 215-7277 |
| STREET ADDRESS 3916 C HIGHWAY 280 | | CITY ALEXANDER CITY | | STATE AL | ZIP CODE 35010 |
| PAWN LENDER HOURS OF OPERATION: Monday to Friday ____9 A.M. to ____6 P.M., Saturday ____10 A.M. to ____2 P.M., CLOSED ON SUNDAY. | | | | PRIMARY CONTACT PERSON ANDRE WHETSTONE | |

| PLEDGOR: FIRST NAME BERNICE | MIDDLE NAME | LAST NAME GUNN | SOCIAL SECURITY NO. 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 | | DRIVER'S LICENSE NO./STATE ID NO. 3390072 | |
|---|---|---|---|---|---|---|
| RESIDENCE STREET ADDRESS 69050 HWY 9 | | | CITY GOODWATER | | STATE AL | ZIP CODE 35072 |
| HOME PHONE (256) 839-5708 | CELL PHONE (256) 404-8057 | RACE BLACK | SEX FEMALE | | HEIGHT 507 | DATE OF BIRTH 05/08/1954 |

| CO-PLEDGOR: FIRST NAME | MIDDLE NAME | LAST NAME | SOCIAL SECURITY NO. | DRIVER'S LICENSE NO./STATE ID NO. | |
|---|---|---|---|---|---|
| RESIDENCE STREET ADDRESS | | | CITY | STATE | ZIP CODE |
| HOME PHONE | CELL PHONE | RACE | SEX | HEIGHT | DATE OF BIRTH |

| MOTOR VEHICLE TITLE CERTIFICATE NUMBER 33895077 | STATE AL | VEHICLE IDENTIFICATION NUMBER (VIN) 4A3AJ46G8SEO86151 | LICENSE PLATE NUMBER 22A219V |
|---|---|---|---|
| YEAR 1995 | MAKE MITSUBISHI | MODEL GALANT | TYPE | COLOR MRN |

In this Pawn Ticket the words "Pawn Ticket," "original contract," and "ticket," mean this signed agreement including the Waiver of Jury Trial and Arbitration Provision. In this Pawn Ticket the words "you" and "your" mean the pledgor and/or co-pledgor identified above who have signed it.   The words "Pawnbroker," "we," "us" and "our" mean TitleMax of Alabama, Inc. d/b/a TITLEMAX OF ALEXANDER CITY #1  which is in the business of lending money on the security of pledged goods left in pawn, operating pursuant to the Alabama Pawnshop Act Code of Ala. § 5-19A-1 et seq. and regulated by the Supervisor of the Bureau of Loans of the State Banking Department. The words "item," "goods," "pledged goods" and "item pawned" mean the motor vehicle identified above.

In consideration of your delivery to us of the Motor Vehicle's Certificate of Title endorsed in blank and keys for the pledged goods, we agree to loan you $500.00 ____ ("Principal Loan Amount"), hold title to the pledged goods for thirty days until 11/21/2005 ____ (the "Maturity Date"), and obtain constructive possession of the pledged goods. That is, we will only maintain possession of the TITLE to the motor vehicle ONLY, not the actual motor vehicle. If you choose to redeem or repurchase the pledged goods, then you agree to pay us $ 579.95 on the Maturity Date, and we will return the pledged goods to you, unless the pledged goods have been taken into custody by a court or by a law enforcement officer or agency. You hereby grant to us a security interest in your motor vehicle which is titled, unencumbered, and listed above. We do not accept personal checks. Please note the following: 1. The amount of cash advanced under this Pawn Ticket is $500.00 ; 2. The maturity date of the pawn transaction is 11/21/2005 ; 3. The amount due hereunder is $579.95 ; 4. The monthly rate is 15.9% and the pawn charges are $ 79.95.

FEDERAL TRUTH-IN-LENDING DISCLOSURES

|  | Amount Financed | Total of Payments |
|---|---|---|
|  | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
|  | $ 500.00 | $ 579.95 |

Payment Schedule:     One payment in the amount of $579.95 due on Monday ____ (day of week), 11 (month) 21 (day), 05 (year).

Security:     You are giving a security interest in the Motor Vehicle.

Prepayment:  If you pay off early, you will not be entitled to a refund of part of the finance charge.

See the terms below and on the other pages of this Pawn Ticket for any additional information about nonpayment, default and prepayment refunds.

Itemization of Amount Financed:
1.   $ 500.00 ____ Amount given to you directly.
2.   $ 0.00 ____ Amount paid on account no. _____ with us.
3.   $ 0.00 ____ Amount paid to others on your behalf (title fees).

Page 1 of 4



**Prepayment.** You may prepay in full at any time the amount owing to redeem the pawned item and will not incur an additional charge or fee. However, because the finance charge (pawnshop charge) is earned, due, and owing as of the date of the pawn transaction, you will not be entitled to a rebate and refund of any part of the finance charge.

**Representations and Warranties.** You verify that you are the rightful owner of the goods or are entitled to sell or pledge the goods. You verify that you are 19 years of age or older.

**Default.** Because you have no obligations to redeem the pledged goods or pay us any amount hereunder, you will only be in default if the representations and warranties you make herein are false. In the event of default, we may exercise our rights under Alabama law.

**Nonredemption and Forfeiture.** You shall have no obligation to redeem pledged goods or make any payment on this pawn transaction. Pledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to us and in and absolute right, title, and interest in and to the goods shall vest in us, unless you request and we grant a deferral. You shall have no obligation to redeem pledged goods or make any payment on this pawn transaction even if it has been deferred. Pledged goods not redeemed within 30 days following any deferred maturity date shall be forfeited to us and in and absolute right, title, and interest in and to the goods shall vest in us.

**Lost Goods or Tickets.** Any person properly identified as pledgor or as authorized representative of the pledgor and presenting the pawn ticket to us shall be entitled to redeem or repurchase the pledged goods described herein. If the pawn ticket is lost, destroyed, or stolen, you shall so notify us in writing, and receipt of this notice shall invalidate the pawn ticket, if the pledged goods have not previously been redeemed. Before delivering the pledged goods or making any payment on this pawn transaction, we shall require you to make a written statement of the loss, destruction, or theft of the ticket. We are entitled to a fee not to exceed five dollars in connection with each lost, destroyed, or stolen pawn ticket and the taking of a properly prepared written statement for the pawn ticket.

**Lien and Late Redemption.** We shall have a lien on the pledged goods pawned for the money advanced and the pawnshop charge owed, but not for other debts due to us, subject to the rights of other persons who have an ownership interest or prior liens in the pledged goods. We shall retain possession of the pledged goods except as otherwise herein provided and by applicable law until the lien is satisfied. Pledged goods not redeemed on or before the maturity date set out in this pawn ticket or a subsequently extended maturity date, shall be held by us for 30 days following that date and may be redeemed or repurchased by you within the period by the payment of the originally agreed redemption price, and by the payment of an additional pawnshop charge equal to the original pawnshop charge.

**Governing Law and Assignment.** This Pawn Ticket shall be governed by the laws of the State of Alabama, except that the arbitration provision is governed by the Federal Arbitration Act ("FAA"). We may assign or transfer this Pawn Ticket or any of our rights hereunder.

**WAIVER OF JURY TRIAL AND ARBITRATION PROVISION.** Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1. For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Pawn Ticket (including the Arbitration Provision), the information you gave us before entering into this Pawn Ticket, any past agreement or agreements between you and us, and/or any renewal of this Pawn Ticket (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all



claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

2. **You acknowledge and agree that by entering into this Arbitration Provision:**

    (a)   YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;

    (b)   YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and

    (c)   YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

3. Except as provided in Paragraph 6 below, all disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.

4. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select either of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org, or National Arbitration Forum (1-800-474-2371) http://www.arb-forum.com. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Pawn Ticket or the Arbitration Provision, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

5. Regardless of who demands arbitration, we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the FAA, and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the transaction under this Pawn Ticket occurred, or in such other place as shall be ordered by the arbitrator. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. If the arbitrator renders a decision or an award in your favor resolving the dispute, then you will not be responsible for reimbursing us for your portion of the Arbitration Fees, and we will reimburse you for any Arbitration Fees you have previously paid. If the arbitrator does not render a decision or an award in your favor resolving the dispute, then the arbitrator shall require you to reimburse us for the Arbitration Fees we have advanced, not to exceed the amount which would have been assessed as court costs if the dispute had been resolved by a state court with jurisdiction, less any Arbitration Fees you have previously paid. At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having jurisdiction.

6. All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by

Additional Terms and Conditions of the Pawn Ticket

binding arbitration.  Furthermore, nothing in this Arbitration Provision shall limit the right of you or us (a) to foreclose against the Motor Vehicle by the exercise of any power under the Pawn Ticket or under applicable law, (b) to exercise self-help remedies such as set off or repossession, or (c) to obtain provisional or ancillary remedies such as pre-judgment seizure of property, detinue, replevin, or injunctive relief, or to seek or obtain any other traditional equitable relief which does not claim money damages from a court having jurisdiction.  The institution and maintenance by you or us of any action set forth in this *Paragraph 6* shall not constitute a waiver of the right to submit any dispute to arbitration, including any counterclaim asserted.

7.  This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA.  If a final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the State of Alabama.

8.  This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns.  The Arbitration Provision is binding upon and benefits us, our successors and assigns, and related third parties.  The Arbitration Provision continues in full force and effect, even if your obligations have been renewed, prepaid, paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.

**Redemption and Request for Deferral or Renewal.**  The terms of this paragraph will not apply if you do not meet our credit criteria or if the pledged goods have been taken into custody by a court or by a law enforcement officer or agency.  On the Maturity Date or within 30 days thereafter (the "Grace Period"), if you choose not to redeem the pledged goods but request that we continue to hold the pledged goods for an additional thirty days ("Deferral Period"), then we will hold the pledged goods during the Deferral Period in exchange for your payment of the pawnshop charge owing, which may also include a prorated pawnshop charge ("Prorated Pawnshop Charge") for holding the pledged goods through the date of the deferral.  The Deferral Period will run from the date that you make such payment and the new Maturity Date will be the 30th day after such payment.  Likewise, if within the 30-day Grace Period after the end of any Deferral Period or subsequent Deferral Period, you request that we continue holding the pledged goods for an additional thirty days, then we will hold the pledged goods during such additional Deferral Period in exchange for such pawnshop charge.  **Furthermore, any time before the expiration of any Deferral Period or subsequent Deferral Period, you may choose to redeem or repurchase the pledged goods by paying the amount of cash advanced and original pawnshop charge, plus any unpaid, Prorated Pawn Charge.**

---

**Alabama Disclosures:**
1. Any personal property pledged to a pawnbroker within this state is subject to sale or disposal when there has been no payment made on the account for a period of 30 days past maturity date of the original contract, and no further notice is necessary.
2. The pledgor of this item attests that it is not stolen, it has no liens or encumbrances against it, and the pledgor has the right to sell or pawn the item.
3. The item pawned is redeemable only by the bearer of this ticket.

Pledgor's Signature

---

By signing this Pawn Ticket, you acknowledge that it was filled in before you did so and that you have received an exact copy of it, signed or initialed by an employee of TitleMax of Alabama, Inc.  You also warrant and represent that you are not a debtor under any proceeding in bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code. **You further acknowledge that you have read, understand, and agree to all of the terms of this Pawn Ticket, including the above "Waiver of Jury Trial and Arbitration Provision."**

**If payment is made after the maturity/renewal date, but within the 30-day Grace Period, the new maturity/renewal date shall be 30 days from the date of that renewal and the Prorated Pawn Charge may apply at the pawnbroker's option.** This document is subject to a security interest in favor of, and pledged as collateral to, CapitalSource Finance LLC.

Pledgor Signature

Co-Pledgor Signature

TitleMax of Alabama, Inc. d/b/a **TITLEMAX OF ALEXANDER CITY #1**
By
As employee

Account Number: 1364693

EXHIBIT B

## Customer Receipt

| PAYMENT INFORMATION | | RECEIPT NUMBER 2161452 |
|---|---|---|

| PAYMENT MADE TO | PAYMENT MADE BY |
|---|---|
| TITLEMAX OF ALEXANDER CITY #1<br>3916 C HIGHWAY 280<br>ALEXANDER CITY, AL 35010<br>(256) 215-6662 | BERNICE  GUNN<br>69050 HWY 9<br>GOODWATER, AL 35072<br>(256) 839-5708 |

| DATE/TIME OF RECEIPT | PAYMENT DUE DATE | ACCOUNT NUMBER | ORIGINAL ACCOUNT NUMBER |
|---|---|---|---|
| 7/21/2006 | 07/22/2006 | 2130946 | 2037114 |

| PAYMENT TYPE | AGENT RECEIVING PAYMENT | PAYMENT DUE |
|---|---|---|
| CASH | steven.crawford | 07/22/2006 |

### TODAY'S PAYMENT DETAILS

PRINCIPAL PAID:      $0.00
+
INTEREST PAID:       $63.93
+
CHARGES PAID
INCLUDING ANY
PRORATED
PAWNSHOP
CHARGE:              $0.00
=
TOTAL PAID TODAY:    $63.93

### NEXT PAYMENT INFORMATION

PRINCIPAL DUE:       $399.82
+
INTEREST DUE:        $63.93
+
UNPAID
PRORATED
PAWNSHOP
CHARGE:              $0.00
=
TOTAL AMOUNT DUE:    $463.75

INTEREST DUE ON:     08/21/06

RECEIVE 25$ FOR REFERRALS

You are only required to pay the Interest Due amount in order to extend or renew the Pawn Ticket. Your next payment due date is indicated above in the Interest Due Date block. The length of your Pawn Ticket is 30 days and can only be renewed or extended with the agreement of both parties and only for 30-day incremental periods.

By signing below, the customer acknowledges that payment information above is accurate and that any amount shown in the Interest Due block above must be paid in 30 days.

*Bernice Gunn*
CUSTOMER SIGNATURE

## *Send us a new customer and we will cash this check for you!!!*

TitleMax
3916 C HIGHWAY 280
ALEXANDER CITY, AL 35010
(256) 215-6662                                    Date _____

Pay to the
Order of___ BERNICE  GUNN  [2130946] ___        $25.00

_____ Twenty Five and 00/100 _____        *Dollars*

For    Customer Referral Fee _____

Authorized by: _____    Referred Customer
                                   Account #: _____