IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

Case No. 03:07-cv-00233 WKW

---

| | |
|---|---|
| In re: | * |
| | * |
| BERNICE GUNN | * |
|     Debtor(s) | * Chapter 13 Case No: <u>06-80646</u> |
| | * |

---

| | |
|---|---|
| BERNICE GUNN | * |
|     Plaintiff | * |
| | * |
| vs. | * AP No: <u>06-08049</u> |
| | * |
| TITLEMAX OF ALABAMA, INC. | * |
|     Defendant | * |

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
HONORABLE WILLIAM R. SAWYER PRESIDING

---

REPLY BRIEF AND ARGUMENT OF DEBTOR/APPELLANT

---

Harvey B. Campbell, Jr.
Attorney for Debtor/Plaintiff
CAMPBELL & CAMPBELL, P.C.
P.O. Drawer 756
Talladega, Al. 35161
(256) 761-1858

Huel M. Love Jr.
Attorney for Debtor/Plaintiff
P.O. Box 1079
Talladega, Al. 35161
(256) 362-3073

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

**CASES:**

Ancata v. Prison Health Services, Inc. 769 F.2d 700, 703 (11th Cir. 1985) . . . . . . . . . . . . . . . . . 11

Barlow v. Evans, 992 F.Supp 1299 (M.D.Ala, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Burnett v. Ala. Moana Pawn Shop, 3 F.3d 1261 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Dennis v. Handley, 453 F.Supp. 833, (N.D.Ala. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,7,10

Henson v. Columbus Bank and Trust Co. 651 F.2d 320 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . 6

Hishon v King & Spalding, 467 U.S. 69, 73, 81 L.Ed.2d 59,
104 S.Ct. 2229 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,10

In Re Headrick, 343 B.R. 762 (Bankr. E.D. Va. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In Re Sciafe, 825 F.2d 357 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,6,7,10

In Re Wyatt, 338 B.R. 76 (Bankr. W.D. Mo. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Wright v Newsome, 795 F.2d 964, 967 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

Wiley v. Earl's Pawn & Jewelry, Inc., 950 F.Supp. 1108 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATUTES:**

12 C.F.R. §226.17(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

12 C.F.R. §226.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,10

12 C.F.R. §226.20(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,4,5,6

12 C.F.R. §226.20(a)(1) Official Staff Commentary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §152(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §3571 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Ala.Code (1975) §5-19A-8(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,10

Ala.Code (1975) §5-19A-10(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT

A. THE RENEWAL OF A SINGLE PAYMENT OBLIGATION WHICH CHANGES ALL MATERIAL TERMS OF THE INITIAL OBLIGATION CONSTITUTES A REFINANCING OF THAT OBLIGATION UNDER TILA AND REQUIRES NEW DISCLOSURES

As was shown in the Plaintiff's initial brief herein, the provisions of 12 *C.F.R.* §226.20(a) can be construed in harmony with the holdings in <u>Dennis v. Handley</u>, 453 F.Supp. 833, (N.D.Ala. 1978) and <u>In Re Sciafe</u>, 825 F.2d 357 (11th Cir. 1987) for the proposition that each transaction between a debtor and a pawnbroker which occurs subsequent to an initial pawn transaction and which is not on identical terms with that initial pawn transaction is in fact a separate loan transaction requiring separate TILA disclosures.12 *C.F.R.* §226.20(a) ; <u>Dennis v Handley</u>, supra at 835; <u>In Re Sciafe</u>, supra at 361

The Official Staff Commentary to 12 *C.F.R.* §226.20(a)(1) provides, in pertinent part, the following:

> 1. Definition. A refinancing is a new transaction requiring a complete new set of disclosures. Whether a refinancing has occurred is determined by reference to whether the original obligation has been satisfied or extinguished and replaced by a new obligation, based on the parties contract and applicable law. The refinancing may involve.... the rescheduling of payments under an existing obligation."

In response, the Defendant, TitleMax, would have this court hold as a matter of law that the Plaintiff cannot state a TILA claim under 12 *C.F.R.* §226.20(a) against a pawnbroker for nondisclosure in conjunction with the "refinancing" of a pawn transaction, notwithstanding the fact that both the *Dennis* court and the *Sciafe* court found defendants liable under TILA in such circumstances and despite the fact that 12 *C.F.R.* §226.20(a) provides exemption only for those single payment renewals which do not change the terms of the original obligation. (e.g. brief of Appellee, page 15)

TitleMax has devoted a significant portion of it's brief in an effort to convince this Court

1

that the transactions between Titlemax and the Plaintiff did not create any "debt". On page 7 of its brief Titlemax asserts that "the customer is not personally liable for the amount of money loaned". Subsequently, in footnote 5 on page 11 of it's brief, Titlemax claims that "[I]ndeed, a consumer is not obligated to do anything in a pawn transaction because the pledgor is not personally obligated to pay the pawnshop". Later, on page 18, Titlemax states "[p]utting aside that under a pawn transaction, there is no personal liability of the pledgor and thus no "debt..." In footnote 8 Titlemax reiterates: "Plaintiff's assertion that upon the signing of the Customer Receipts "she became indebted" to TitleMax is incorrect. First, as stated above, there is no "debt" as there is no personal liability..." Again on page 21 TitleMax states that "putting aside that there is no obligation in a pawn transaction..."

If, as TitleMax claims, the Plaintiff incurred no "debt" owed to TitleMax as a result of these transactions, why then has TitleMax filed a claim in the Plaintiff's Bankruptcy case asserting that the Plaintiff owes it the monetary sum of $463.75? TitleMax's claim was attached as Exhibit A to the Plaintiff's complaint and was filed subject to the penalties provided in 18 U.S.C. §152(4) and 18 U.S.C. §3571 for false claims. In that Bankruptcy action TitleMax did not seek the recovery of the automobile which would have been it's property under the terms of the initial pawn transaction nor does it identify the claim as an "in rem" claim based upon a pawn transaction. Rather, according to the claim documents, TitleMax sought payment from the Bankruptcy estate in the amount of $463.75, which - not coincidentally - is the amount declared to be the "Total Amount Due" under the transaction which is the basis of the Plaintiff's claim herein and which TitleMax *specifically identifies by account number* in it's Bankruptcy claim. Moreover, according to TitleMax's Bankruptcy claim, the basis of the debt is declared to be for "money loaned", with the debt being secured by a motor vehicle valued at $600.00. (Exhibit A to Plaintiff's Adversary Complaint).

Clearly TitleMax's claim in the Plaintiff's Bankruptcy case directly contradicts it's assertions to this Court that there is no monetary debt owed by the Plaintiff to TitleMax. This transaction between the Plaintiff and TitleMax cannot support both positions which have been

2

advanced by TitleMax. Either there is no "debt" pursuant to their arguments here, thus rendering their claim in the Bankruptcy case fraudulent, or else there is in fact a "debt" as evidenced by their Bankruptcy claim, thus rendering false their contrary assertions to this Court.

In addition to being directly contradicted by their own documents and actions, Titlemax's argument in this regard has heretofore been specifically rejected by both the Middle District of Alabama and the Southern District of Alabama. In *Barlow v. Evans*, 992 F.Supp. 1299 (M.D.Ala. 1997), that District Court for the Middle District of Alabama imposed TILA damages upon a pawnbroker for nondisclosure, notwithstanding the pawnbroker's claim that there was no "debt". In rejecting the pawnbroker's claim that there was no "debt" involved in the pawn transaction, the *Barlow* court held the following:

> "...TILA does not define the term "debt," but defendants argue that a debt must be accompanied by an obligation to repay and that without that obligation to repay, a credit situation does not arise. They argue that in the case of a pawn transaction in Alabama, there is no debt because, pursuant to the Alabama Pawnshop Act, *§5-19-A1, et seq. Alabama Code (1996)*, the pledgor/consumer has no obligation to make any payment and the pawn broker is expressly prohibited from making or enforcing an agreement affixing personal liability on the part of the pledgor to repay any amount of money......
> Defendants' argument is at odds with the Federal Reserve Board's Official Staff Interpretations, which specifically state that pawn transactions are covered by TILA" *Barlow v. Evans*, supra at 1304

Citing *Burnett v. Ala. Moana Pawn Shop*, 3 F.3d 1261, the *Barlow* Court went on to hold that:

> "Even without the Federal Reserve Board's guiding commentary concerning the scope of TILA, a determination that TILA covers pawn transactions appears to be a logical, rational decision. ... Recognizing that TILA "is liberally construed to protect consumers," the *Burnett* court rejected an attempt by the defendant pawnbroker to recharacterize pawn transactions as sales. *Id* at 1262  The court reasoned that where a customer "pawns" an item and receives an amount of money in return for the pawned item which is "far less than the property's fair market value," then the customer has a "strong incentive" to "repurchase" the property. *Id*  The court held that **"these factors 'unmistakably mark' the transactions as loans secured by the property, regardless of whether [the consumer] was personally liable for the debt**. *Id* (citing 12 C.F.R.

3

§226.2(a)(25))" *Barlow v. Evans*, supra at 1305,1306 [emphasis supplied]

In *Wiley v. Earl's Pawn and Jewelry Inc.*, 950 F.Supp. 1108 (S.D. Ala. 1997) the Southern District of Alabama likewise considered and rejected a claim that pawn transactions in Alabama do not create a "debt" under TILA in the following pertinent language:

> "Defendants argue that they are not required to make TILA disclosures because pawnbrokers in Alabama do not extend credit. TILA defines credit as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 *U.S.C.* §1602(e). Neither TILA nor Regulation Z defines the word "debt". Defendants, citing various dictionary definitions, contend that a debt must be accompanied by an obligation to repay. They argue that there is no debt because the Alabama Pawnshop Act, *Ala.Code* §§5-19A-1 et seq. (1996 Repl.Vol.) imposes no obligation on a pledgor "to redeem pledged goods or make any payment on a pawn transaction." Id. §5-19A-6.
> Defendants' contention that pawnbrokers are not subject to TILA is in conflict with the Federal Reserve Board's recently adopted amendment to its official staff commentary to Regulation Z. The revised commentary states that "when, in connection with an extension of credit, a consumer pledges or sells an item to a pawnbroker creditor in return for a sum of money and retains the right to redeem the item for a greater sum (the redemption price) within a specified period of time, disclosures are required. [citations omitted] *Wiley v. Earl's Pawn and Jewelry, Inc.*, supra at 1112

Thus both the *Barlow* court and the *Wiley* court agree with the position taken by the Defendant in the underlying Bankruptcy case that the transaction in question is, in reality, a debt secured by property. In light of the Defendant's Bankruptcy claim which asserts the existence of a "debt" and in view of the decisions cited above which flatly reject the claim that pawn transactions do not create a "debt", the Defendant's assertions in this regard may be dismissed out-of-hand as a disingenuous effort to obfuscate the issues of this appeal.

It is essential that TitleMax's convince this Court that there is no "debt" in this transaction, despite all facts and law to the contrary, because such a determination is necessary in order for it to advance the unsubstantiated proposition that, since there was never any debt to "refinance", there can be no "refinancing" of the pawn transaction under 12 *C.F.R.* §226.20(a). (See e.g. footnote 5 at page 11 of the Appellee's brief) The failure of the fundamental premise

4

regarding the existence of a debt renders the balance of this argument untenable.

Furthermore, the efforts of TitleMax to exempt pawn transactions from the "refinancing" provisions of 12 *C.F.R.* §226.20(a) is in direct conflict with the plain language of that code-section. As shown in the Plaintiff's initial brief, the language of 12 *C.F.R.* §226.20(a) exempts the renewal of a single payment obligation ***with no change in the original terms***. Thus this code-section specifically addresses the renewal of single payment transactions, such as the pawn transaction in this case, and exempts **only** those renewal transactions which do not change the terms of the original transaction. Implicit in the narrowly-drawn exemption contained within the language of this code-section is the determination that the renewal of single payment obligations which do in fact change the terms of the original transaction are not exempt from the provisions of 12 *C.F.R.* §226.20(a) and are subject to the disclosure rules concerning refinancing. Were this not so then it would have been a simple matter for the code-section to provide exemption for all renewals of single payment obligations, yet no such blanket exemption appears. What TitleMax is asking this Court to do here is to create such an exemption now.

Like it's argument concerning the existence of a "debt" in the pawn transaction, the balance of the Defendant's argument is a cleverly crafted effort to obscure the only real issue in this appeal - that being whether the renewal of a single payment obligation which alters all material terms of the prior obligation is a refinancing of that obligation subjecting it to new TILA disclosures.

For example, the Defendant discusses at length the "subsequent events" provision of 12 *C.F.R.* §226.17(e) yet an examination of that code-section clearly reveals that it pertains to the validity of initial TILA disclosures, which are not at issue in this litigation. (See e.g. Appellee's brief at p. 20) Moreover, the cited code-section specifically provides that "...new disclosures may be required under ...section 226.20", which is precisely the issue and the code-section pertinent to this litigation. Thus there is in fact a "subsequent event"; that "subsequent event" is the refinancing of the Plaintiff's debt; and the code section cited by the Defendant specifically

5

contemplates the requirement of new disclosures resulting from that "subsequent event"; yet that code-section has no application to this litigation because it relates to the validity of the initial disclosures, not whether new disclosures are in fact necessary. 12 *C.F.R.* §226.17(e). This "analysis" of 12 *C.F.R.* §226.17(e) by the Defendant is simply an attempt to divert attention from the true issue herein and should be viewed with a significant amount of scepticism.

Likewise the Defendant has attempted to convince this Court this transaction is analogous to installment loan transactions such as the refinancing of a residential mortgage or a 60-month car loan (Brief of Appellee, p.12, 17)  However the Appellee has already distinguished these installment loan transactions from pawn transactions in the course of it's treatise on the "unique" nature of pawn transactions. (See e.g. Brief of Appellee, p 7) The fact is that, unlike an installment loan transaction, a pawn transaction is concluded by its terms at the payment due date shown on the pawn ticket.  The importance of this distinction has heretofore been recognized in the case of *In Re Sciafe*, supra. Quoting with approval from *Henson v. Columbus Bank and Trust Co.* 651 F.2d 320 (5th Cir. 1981), the *Sciafe* court found the following:

> "In holding that the case before it did not involve separate transactions for purposes of the Truth in Lending act, the Henson court distinguished the facts before it from those in Dennis v. Handley, 453 F.Supp. 833 (N.D.Ala. 1978):
> > Even if *Handley* identifies a situation to which 15 *U.S.C.* §1640(g) is inapplicable, Henson's argument is untenable.  His payment of interest differs in effect from the pawnor's payment.  If the pawnor did not make the interest payment, under the terms of the pawn contract, the pawnee took title to the pledged property and the "loan" transaction was thereby concluded.  By his payment of interest, however, the pawnor prevented the termination.  In Henson's situation, late payment does not conclude the loan.  Thus each payment in *Handley* created a new loan, while each of Henson's payments was merely part of a single loan transaction."
> In re Sciafe, supra at 360

Thus, in reality, there is no similarity whatsoever between this pawn transaction and any sort of installment loan agreement.  The defendant's assertions to the contrary are in direct contradiction of the court's determination in *In Re Sciafe*, supra, and are also contradicted by its own statements and arguments to the effect that pawn transactions are unique and unlike

6

conventional consumer loans.  Again the Defendant is "blowing smoke" in an attempt to divert attention from the only true issue in this litigation.

As shown in plaintiff's initial brief, and reiterated here, the *Sciafe* court assessed attorney's fees in that case based on the interpretation of former Regulation Z by the court in *Dennis v. Handley*, supra which held that each renewal of the pawn transaction was a separate loan.  *In Re Sciafe*, supra at 361.  However the *Sciafe* court observed that the Revised Regulation Z would exempt "the renewal of a single payment obligation with no change in the original terms".  *In re Sciafe*, supra at 359.

Thus, pursuant to these authorities and Revised Regulation Z, a pawnor who cannot redeem his property at the maturity date of the pawn may pay the interest and extend the maturity date of that obligation ***with no change in the terms of the pawn*** and with no obligation on the part of the pawnbroker to furnish new disclosures, since the only disclosure which would be materially different would be the "payment due" date.  Pursuant to the foregoing authorities, it is only those transactions which do not change the material terms of the pawn which are exempt. Conversely, any transaction which does in fact change the material terms of the pawn is a "refinancing" of the debt and requires new disclosures.  *Dennis v. Handley*, supra, *In re Sciafe*, supra at 361; 12 *C.F.R.* §226.20

## II. THE ALLEGATIONS OF THE PLAINTIFF'S COMPLAINT ARE SUFFICIENT TO STATE A CLAIM THAT THE DEBT OWED TO TITLEMAX IS THE RESULT OF A REFINANCING OF HER ORIGINAL PAWN TRANSACTION

As was shown in the Plaintiff's initial brief and reiterated above, the true issue here is whether a transaction which purports to "renew" a single-payment obligation, but which alters all material terms of the obligation is in fact a refinancing of the transaction subjecting it to new TILA disclosures.   Put another way, the issue is whether the purported "renewal" of the pawn transaction which shares no material terms with the original transaction is in fact a separate loan.

7

As was shown above, TitleMax has filed a claim in the Plaintiff's underlying Bankruptcy case wherein it claims that the Plaintiff owes it the sum of $463.75. (Exhibit A to Adversary Complaint) The provisions of *Ala.Code* (1975) §5-19A-8(7) specifically prohibit a pawnbroker from making any agreement requiring the personal liability of the pledgor. Given that the Alabama Pawnshop Act prohibits the creation of a debt against the pledgor, and in view of the fact that TitleMax has asserted the existence of a debt, it is reasonable to infer that this debt arises outside the purview of the Alabama Pawnshop Act and thus from some transaction other than the initial pawn transaction.

In the Bankruptcy claim TitleMax specifically identifies the source of this monetary claim as being account #2130946. In her initial brief the Plaintiff pointed out the fact that the account number for the debt in question is not the same as the account number for the initial pawn transaction, and purports to "originate" in an account with yet another account number. (See Exhibits to Adversary Complaint and *Brief of Appellant*, p. 9) Clearly this is evidence from which an inference can be drawn that the debt evidenced by the "Customer Receipt" ***originates*** somewhere other than the initial pawn transaction.

The Defendant's response to this showing by the Plaintiff borders on hysteria. Although the standard for a Motion to Dismiss requires the Court to consider the facts alleged by the Plaintiff to be true, (Hishon v King & Spalding, 467 U.S. 69, 73, 81 L.Ed.2d 59, 104 S.Ct. 2229 (1984)), the Defendant feels compelled at this juncture to spew "pseudo-facts" into it's brief in an effort to contradict the facts established by the Exhibits to the Plaintiff's complaint . (Brief of Appellee, p 21)

TitleMax begins by asserting "the fact that TitleMax uses a unique numbering system", when there is nothing in the record whatsoever to demonstrate that this is a "fact" at all. (Appellee's brief p. 21)

Subsequent to the assertion of this supposed "fact", an unidentified narrator begins to

8

testify at length concerning what "really" happens in a TitleMax transaction, as illustrated below:

> "These software fields are merely a numbering function that TitleMax uses to count pawn and renewal transactions.  They are not account numbers in the sense that Plaintiff asserts - they are not loan numbers or customer numbers.  They are automatically assigned sequentially by the computer each time a TitleMax customer renews a pawn or enters an original pawn transaction whereby cash is advanced.  Titlemax tracks its pawns by customer name and TitleMax branch...."
> .Id at 21

The Defendant continues with this "testimony" at some length subsequent to the quoted portions above.  Where do these "facts" come from?  They certainly do not appear in the Plaintiff's complaint.   They do not purport to be made under oath or to even to identify the person or entity who is furnishing  this information.  The Court is simply asked to assume that these are "facts", or perhaps to take judicial notice of their existence.  To say that this method of "proof" is highly unusual would understate the point.  In the vernacular, "the bit dog howls".

It also goes without saying that these supposed "facts" cannot be reconciled with the Defendant's own documentation.  For illustration, someone  "testifies" in brief that "TitleMax tracks its pawns by customer name and TitleMax branch, not account number." (Brief of Appellee, p 21)   However the Bankruptcy claim which TitleMax filed under penalty of perjury asks it to identify the "Account or other number by which creditor identifies debtor."  In response TitleMax did not supply the Debtor's name and TitleMax Branch as it claims in it's "testimony", but rather identified the debt *by the account number*- and supplied the Bankruptcy Court with an account number for the debt which is not the account number of the accompanying pawn ticket, but rather of the "Customer Receipt".

. By way of response to this flood of unverified misinformation supplied by the Defendant in brief, the Plaintiff would represent to this Court that these "pseudo-facts" are not "facts" at all, and would simply ask the Court for the opportunity to prove this statement.

What TitleMax's diatribe on the subject of accounts and account numbering illustrates beyond dispute is that the question of whether this transaction was "refinanced" is not a question

9

of law, but rather one of fact.   It is clear from the foregoing authorities that the Plaintiff can in fact state a Truth-In-Lending claim for failing to provide TILA disclosures in conjunction with the "refinancing"of a single payment pawn wherein the material terms of the original transaction have all changed.  *Dennis v. Handley*, supra, *In re Sciafe*, supra at 361; 12 *C.F.R*. §226.20   The Plaintiff in this case has made such allegations here and has attached exhibits to it's Adversary Complaint which demonstrates that this new transaction has a different principal amount, a different interest amount and a different account number from the original pawn transaction.  This is clearly sufficient to state a claim upon which relief can be granted under the standard for assessing motions to dismiss.  See <u>Hishon v King & Spalding</u>, 467 U.S. 69, 73, 81 L.Ed.2d 59, 104 S.Ct. 2229 (1984); see also <u>Wright v Newsome</u>, 795 F.2d 964, 967 (11th Cir. 1986) .  Accordingly the Bankruptcy court erred in determining as a matter of law that the Plaintiff could not state a TILA claim against these Defendants under the allegations of the complaint.

### III.  TITLEMAX CANNOT CLAIM A PAWNBROKER'S LIEN BASED UPON A DEBT DUE TO THE PAWNBROKER BY THE PLAINTIFF

As shown above, TitleMax has filed a claim in the Plaintiff's Bankruptcy case -not to recover it's property - but rather to recover a debt allegedly due to Titlemax in the amount of $463.75. (Exhibit A to Adversary Complaint)   As was shown above, the provisions of *Ala.Code* (1975) §5-19A-8(7) specifically prohibit a pawnbroker from making any agreement requiring the personal liability of the pledgor.  Given this prohibition, the debt which TitleMax seeks to recover from the Plaintiff through her Bankruptcy proceeding  must necessarily arise outside the purview of the Alabama Pawnshop Act.

As was demonstrated in the Plaintiff's initial brief, the extent of the Pawnbroker's lien on pledged goods is regulated by the following statutory language:

> "(a) A pawnbroker shall have a lien on the pledged goods pawned for the money advanced and the pawnshop charge owed, **but not for other debts due to**

>*the pawnbroker*... The pawnbroker shall retain possession of the pledged goods except as otherwise herein provided until the lien is satisfied" Ala.Code (1975) §5-19A-10(a) [emphasis supplied]

When construed together it is manifestly apparent that the lien which was created by the initial pawn does not extend to the debt which TitleMax seeks to recover in the Plaintiff's Bankruptcy case.

The Plaintiff has clearly stated a claim against the Defendant in Count II which challenges the Defendant's security interest and which is grounded in the language of the Alabama Pawnshop Act. The Plaintiff's objections to the validity of a lien are to be determined in an adversary proceeding. See In Re Headrick, 343 B.R. 762 (Bankr. E.D. Va. 2006); See also In Re Wyatt, 338 B.R. 76 (Bankr. W.D. Mo. 2006)  Accordingly, the Bankruptcy Court erred in dismissing Count II of the Plaintiff's Complaint upon a Fed.R.Civ.P. 12(b)(6) motion. Wright v Newsome, supra; Ancata v. Prison Health Services, Inc, 769 F.2d 700, 703 (11th Cir. 1985)

## CONCLUSION

In light of the arguments and authorities set out herein, and those provided in the Plaintiff's initial brief herein, it is clear that the Plaintiff has stated a TILA claim against the Defendant which is recognized at law. It is equally clear that the Plaintiff's objection to the Defendant's security interest and her Motion to Determine the Validity of a Lien are based upon the express language of the Alabama Pawnshop Act and must be determined in an adversary proceeding. Accordingly the Bankruptcy Court erred in dismissing the Plaintiff's Adversary Complaint for failure to state a claim.

Therefore, pursuant to the foregoing authorities, the Plaintiff prays that this Honorable Court will reverse the Order of the Bankruptcy Court which dismissed the Plaintiff's Adversary Complaint, and will remand this case to that Court for further proceedings. Alternatively the Plaintiff prays for such other, further or different relief to which the Plaintiff is entitled.

Respectfully Submitted:

/s/ Harvey B. Campbell, Jr.
Harvey B. Campbell, Jr.
Attorney for Debtor/Plaintiff
CAMPBELL & CAMPBELL, P.C.
P.O. Drawer 756
Talladega, Al. 35161
(256) 761-1858

/s/ Huel M. Love Jr.
Attorney for Debtor/Plaintiff
P.O. Box 1079
Talladega, Al. 35161
(256) 362-3073

CERTIFICATE OF SERVICE

       I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 26th day of April, 2007:

Jennifer A. Harris
3100 Wachovia Tower
420 North 20th Street
Birmingham, Al. 35203
jharris@burr.com

John Oshea Sullivan
Burr & Forman LLP
Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Ga. 30363
shea.sullivan@burr.com

Erich N. Durlacher
Burr & Forman LLP
Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Ga. 30363
edurlach@burr.com

                                          /s/ Harvey B. Campbell, Jr.
                                          Harvey B. Campbell, Jr.
                                          Attorney for Debtor/Plaintiff
                                          CAMPBELL & CAMPBELL, P.C.
                                          P.O. Drawer 756
                                          Talladega, Al. 35161
                                          (256) 761-1858